UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ANDREW LIPIAN**, *an individual*,

    Plaintiff,

vs.

**UNIVERSITY OF MICHIGAN**,
and **DAVID DANIELS,** *employee
of the University of Michigan, sued
in his personal and official capacity,
jointly and severally,*

    Defendants.

Case No: 18-cv
Hon.

_____

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth A. Marzotto Taylor (P82061)
Andrea M. Mannino (P78856)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500/FAX (248) 258-7881
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff **Andrew Lipian,** by his attorneys **Deborah Gordon Law** complains against Defendants as follows:

### Jurisdiction and Parties

    1.    This is an action for hostile environment and quid pro quo sexual

harassment in violation of Title IX of the Education Amendments of 1972, *as amended*, 20 USC §1681, *et seq.*, 34 C.F.R. §106.31 *et seq.* and the Elliott-Larsen Civil Rights Act, MCL 37.21010 *et seq*.

2. Plaintiff Andrew Lipian (hereafter "**Plaintiff**") was at all times material a student at the University of Michigan in Ann Arbor, located within the Eastern District of Michigan.

3. Defendant **University of Michigan** (hereafter "**University**") is a state university that maintains its principal place of business and conducts business in the Eastern District of Michigan.

4. Defendant **David Daniels** (hereinafter "**Daniels**"), age 52, was at all times material hereto a Professor at the University of Michigan.

5. The events underlying this Complaint occurred in the Eastern District of Michigan.

6. This Court has federal subject matter jurisdiction pursuant to 28 USC §1331 and 28 USC §1343.

## *Background Facts*

7. In late 2015 Plaintiff applied to the University's "School of Music, Theatre & Dance" (hereafter **"SMTD"**) to obtain a master's degree from its Voice Department.

2

8. Plaintiff began classes at the SMTD in Fall, 2016.

9. Defendant Daniels joined the SMTD faculty in the Fall, 2015 as a Professor. Daniels had no teaching or academic experience; he had been a professional opera singer and recording artist for two decades. He was brought onboard to elevate the prestige of the SMTD Voice Department and to increase enrollment at the University.

10. The University faculty website page promotes the idea that Daniels is a major star, stating, in part, that he "has appeared with the world's major opera companies and on its main concert and recital stages. He made history as the first countertenor to give a solo recital in the main auditorium of Carnegie Hall. The Chicago Tribune has called Daniels 'today's gold standard among countertenors.' Gramophone magazine acknowledged his contribution to recorded excellence as well as his expansion of the repertoire for his voice type by naming him one of the 'Top Ten Trailblazers' in classical music today. . . .   Highly sought after for the works of Handel, Monteverdi, Gluck, Mozart, and Britten, Daniels has been featured on the great operatic stages of the world to overwhelming critical acclaim. Highlights of recent seasons include multiple appearances at the Metropolitan Opera as the title role of Giulio Cesare in David McVicar's inventive production, Prospero in the Baroque pastiche The Enchanted Island, and in the title role of

Gluck's Orfeo ed Euridice in a new production marking Mark Morris's debut at the Met as a stage director and conducted by music director James Levine. Appearances at the Lyric Opera of Chicago include the title role in Handel's Rinaldo, Oberon in Britten's A Midsummer Night's Dream, and Lichas in Peter Sellars's new production of Handel's Hercules. Additional appearances include Arsamenes in Handel's Xerxes and Bertarido in Handel's Rodelinda with the San Francisco Opera. At Santa Fe Opera his role debut as Roberto in Vivaldi's Griselda, the work's first major U.S. production by Peter Sellars, drew rave reviews. http://smtd.umich.edu/about/faculty-profiles/david-daniels/

11. In particular, Plaintiff sought a career as a countertenor (also referred to as contra tenor), a unique type of classical male singing voice whose vocal range is equivalent to that of the female contralto or mezzo-soprano voice types.

12. Defendant Daniels had established an extremely successful career as a countertenor prior to joining the faculty of the University, as set forth in part above, and had multiple high level connections in the performing and recording industries and in the international opera community. Daniels made a point of ensuring that Plaintiff knew this.

13. Daniels promoted the idea that he was responsible for placing students in roles and on stage and that he would do the same for Plaintiff.

4

14. Beginning in Fall, 2016, Plaintiff was one of Daniels's students at the University. In addition to attending his class, Daniels was Plaintiff's Voice Professor, attending private sessions with him once a week.

15. Based upon Daniels's continual promises of career assistance and his friendly overtures and encouragement, Plaintiff viewed Daniels as a professional mentor as well as his Professor. Daniels organized auditions for Plaintiff with top level conductors and agents visiting the University and promised to connect him with his own manager and additional professional opportunities.

16. Daniels is openly gay.

17. Plaintiff is heterosexual and married.

18. Daniels attempted to engage and encourage Plaintiff in Daniels' own sexual preferences and proclivities.

19. Daniels told Plaintiff on many occasions that he was "really hot."

20. In spite of being a University Professor, Daniels thought nothing of continually discussing sexual topics and activities with Plaintiff and other students with the expectation that his conduct would be accepted.

21. It was well known by faculty and administration at the SMTD that Daniels was extremely open about and forward with his sexual thoughts and feelings, including sharing sexual images and banter with them. But no

5

administrator took any action to ensure that Daniels was not sexually harassing students.

22. Daniels apparently had little or no understanding of or training in the University's Standard Practice Guide (SPG) on sexual harassment of students by faculty.

23. The SPG states that:

> Unwanted sexual statements – sexual or "dirty" jokes, comments on physical attributes, spreading rumors about or rating others as to sexual activity or performance, talking about one's sexual activity in front of others, and displaying or distributing sexually explicit drawings, pictures and/or written material. Unwanted sexual statements can be made in person, in writing, electronically (email, messaging, blogs, web pages, etc.), and otherwise.
>
> Unwanted personal attention – letters, telephone calls, visits, pressure for sexual favors, pressure for unnecessary personal interaction, pressure for dates where a sexual/romantic intent appears evident but remains unwanted, and stalking.
>
> Unwanted physical or sexual advances – touching, hugging, kissing, fondling, touching oneself sexually for others to view, sexual assault, intercourse, or other sexual activity.

24. The SPG further states:

> Sexual harassment most often occurs when a person has actual or apparent power or authority over another; however, it may also occur between individuals of equal status or rank within the University.

25. The University failed to ensure that this Policy was followed by

Daniels.

26. On March 24, 2017, Daniels invited Plaintiff to his apartment to watch "Ru Paul's Drag Race" because he was "lonely" and wanted to discuss Plaintiff's "career."

27. Plaintiff was served several drinks of bourbon. When he said he was tired and needed sleep for a performance the next day, Daniels handed him what he said was a Tylenol PM but was actually the sleep medication Ambien. Daniels then removed Plaintiff's clothes, forced himself upon Plaintiff and groped and touched his genitals and face.

28. Shortly thereafter, Daniels told Plaintiff that he would likely be receiving a full fellowship for the two years of his master's program.

29. Daniels was aware that Plaintiff sought to succeed professionally as a countertenor and offered his assistance in "opening doors" for him and providing him with counsel, advice and assistance. Daniels convinced Plaintiff that he was the key to Plaintiff having a professional career.

30. In September 2017 the SMTD "Recruitment Coordinator" told Daniels he should watch out for one of his students [not Plaintiff] who was complaining openly that Daniels was "sexual" during his voice lessons.

31. Daniels sent Plaintiff multiple text messages, including

7

- requests for pictures of Plaintiff's genitals

- reiterating that he would "open doors" for Plaintiff professionally

- requests for a video of Plaintiff masturbating

- graphic pictures of a woman's vagina

- graphic pictures and videos of men's genitals and masturbation

- a video of Daniels masturbating

- graphic sexual references and images

- a reference to "our bourbon and ambien night."

32. In spite of the multiple requests, Plaintiff never shared any sexual photos or videos of himself or sexual images of any kind with Daniels. He attempted to keep Daniels at bay, and to not offend or anger him while continuing his education.

33. In May, 2018 Daniels told Plaintiff that someone had sent an anonymous letter to the SMTD stating that Daniels had "come on" sexually to two SMTD students He later advised Plaintiff that a University administrator told him the letter was inconsequential and probably false.

34. In August, 2018, Daniels was publicly accused by a Rice University graduate student and opera singer of drugging and sexually assaulting him after a Houston Grand Opera performance in 2010.

35. Shortly after the allegation described above, Daniels was publicly accused by a 19-year-old male, believed to be a University student, of asking for a sex act in exchange for money via the gay dating app known as Grindr. Upon information and belief, The University of Michigan Police Department turned the matter over to the Pittsfield Township Police Department.

36. Both of the accusations were covered in the national media.

37. In August, 2018 a faculty member became aware of the sexual assault Plaintiff had been subjected to in 2017 and as a mandatory reporter, reported it to the University Office of Institutional Equity (OIE), part of the University's Title IX office, which is responsible for an internal investigation of sexually harassing behavior by University faculty.

38. Plaintiff has not been contacted by the OIE and is unaware of any investigation by it.

39. As of August, 2018, the University listed Daniels' status on his faculty web page as "(on leave Fall 2018)". Daniels continues to draw University pay and benefits.

40. The University has never instituted a Title IX investigation into Daniels' behavior, in spite of all the available information and complaints that were brought to its attention.

9

## COUNT I
### *Sexual Harassment in Violation of Title IX*
(*as against Defendant University*)

41.     Plaintiff repeats and realleges paragraphs 1-40 set forth above with the same force and effect as though set forth in full herein.

42.     Defendant University of Michigan is a recipient of federal funds and is subject to Title IX of the Education Amendments of 1972, *as amended*, 20 USC §1681, *et seq.*, 34 C.F.R. §106.31.

43.     As such, Defendant is prohibited from engaging in sex discrimination, including sexual harassment of a student by a Professor under Title IX. 20 USC §1691(a).

44.     Plaintiff was subjected to a hostile environment sex harassment based on his gender by his Professor, David Daniels, in violation of Title IX.

45.     The sexual harassment included subjecting Plaintiff to a hostile environment as described above.

46.     The actions described above directed at Plaintiff by Daniels were at all times unwelcome.

47.     The University was deliberately indifferent to the actions of Daniels. Defendant University knew, or should have known, of Daniels predilection to seek sex from students, and/or create a hostile environment based on sex.

10

48. Moreover, Defendant knew that Daniels was a renowned singer and that he had particular power to intimidate, entice, coerce and/or manipulate students. In fact, the University ignored warnings about his behavior precisely because he was valuable to it as "today's gold standard among countertenors," as described on its website.

49. The University failed to train Daniels and to ensure that he follow its Policy prohibiting sexual harassment.

50. As a direct and proximate result of Defendants unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to, time and resources, career opportunities and earning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT II
### *Sex discrimination in violation of*
### *The Michigan Elliott-Larsen Civil Rights Act*
(*as against the University and Daniels*)

51. Plaintiff repeats and realleges Paragraphs 1 through 50 set forth above with the same force and effect as though set forth in full herein.

52. Defendant University is an "educational institution" covered by MCL 37.2401 and Daniels was an "agent" of that educational institution.

53. Pursuant to MCL 37.2102, the University and its agents were

prohibited from engaging in sex discrimination, which includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature where submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain education or the conduct or communication has the purpose or effect of substantially interfering with an individual's education, or creating an intimidating, hostile, or offensive educational environment.

54. As described aforesaid, Plaintiff was sexually harassed in violation of the law.

55. The action and inactions of Defendants resulted in discriminating against Plaintiff in the full utilization of or benefit from an educational institution or the services, activities, or programs provided by the educational institution.

56. Defendants' actions as described above were in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

57. As a direct and proximate result of Defendants unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment; and loss of personal and professional reputation and opportunities.

## Relief Requested

Plaintiff demands judgment against Defendants as follows:

A. Legal Relief:

1. Compensatory damages in whatever amount he is found to be entitled;

2. Exemplary damages in whatever amount she is found to be entitled;

3. An award of interest, costs, reasonable attorney fees, and expert witness fees.

B. Equitable Relief:

1. An injunction out of this Court prohibiting any further acts of wrongdoing against Plaintiff;

2. An award of interest, costs and reasonable attorney fees; and,

3. Whatever other equitable relief appears appropriate at the time of final judgment.

Dated: October 24, 2018      **DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth A. Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

## JURY DEMAND

Plaintiff Andrew Lipian, by and through his attorneys Deborah Gordon Law, demands a trial by jury of all the issues in this cause that are so triable.

Dated: October 24, 2018　　　　**DEBORAH GORDON LAW**
　　　　　　　　　　　　　　　/s/Deborah L. Gordon (P27058)
　　　　　　　　　　　　　　　Elizabeth A. Marzotto Taylor (P82061)
　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　33 Bloomfield Hills Parkway, Suite 220
　　　　　　　　　　　　　　　Bloomfield Hills, Michigan 48304
　　　　　　　　　　　　　　　(248) 258-2500
　　　　　　　　　　　　　　　dgordon@deborahgordonlaw.com
　　　　　　　　　　　　　　　emarzottotaylor@deborahgordonlaw.com