UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW LIPIAN,

       Plaintiff,

                                Case No. 18-cv-13321

v.

                                Hon. Arthur J. Tarnow

UNIVERSITY OF MICHIGAN et al.,   Mag. Mona K. Mazjoub

       Defendant.

_____

| | |
|---|---|
| Deborah L. Gordon (P27058) | Brian M. Schwartz (P69018) |
| Elizabeth A. Marzotto Taylor (P82061) | Jessica Pask (P82212) |
| Andrea M. Mannino (P78856) | MILLER, CANFIELD, PADDOCK AND |
| DEBORAH GORDON LAW | STONE, P.L.C. |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 33 Bloomfield Hills Parkway, Suite 220 | 150 West Jefferson, Suite 2500 |
| Bloomfield Hills, Michigan 48304 | Detroit, Michigan 48226 |
| (248) 258-2500 | (313) 963-6420 |
| dgordon@deborahgordonlaw.com | schwartzb@millercanfield.com |
| emarzottotaylor@deborahgordonlaw.com | pask@millercanfield.com |

_____

**DEFENDANTS' RESPONSE TO PLAINTIFF'S RENEWED
OBJECTIONS TO THE MAGISTRATE'S ORDER BASED ON THIS
COURT'S ORDER OVERRULING PLAINTIFF'S OBJECTION
<u>WITHOUT PREJUDICE [ECF 206]</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................v

STATEMENT OF ISSUES PRESENTED......................................................vi

I.      INTRODUCTION .......................................................................1

II.     STATEMENT OF RELEVANT FACTS.....................................2

III.    ARGUMENT................................................................................6

      A.      Standard Of Review .........................................................6

      B.      Plaintiff's "Renewed" Objections Are Untimely And Repeat The Arguments Presented In The Underlying Motion.......................7

      C.      The Magistrate Judge's Order To Disclose The Names Of Students Who Did Not Otherwise Object Properly Balances Student Privacy Interests With Plaintiff's Discovery Needs ..............9

      D.      The Magistrate Judge Properly Limited The Scope of Discovery...........................................................................15

      E.      Plaintiff Has Not Provided Any Persuasive Reason For The Release Of The Objecting Student Witness Names..........................18

IV.     CONCLUSION.............................................................................23

# Table of Authorities

**Page(s)**

**Cases**

*Adams v. Comm'r of Soc. Sec.*,
  2016 WL 1084681 (E.D. Mich. Mar. 21, 2016) ...................................................6

*Armstrong v. Shirvell*,
  2012 WL 2179120 (E.D. Mich. June 13, 2012) (Tarnow, J.) .........................v, 6

*Bauer v. Kincaid*,
  759 F. Supp. 575 (W.D. Mo. 1991) ...................................................................12

*Black v. Kyle-Reno*,
  2014 WL 667788 (S.D. Ohio Feb. 20, 2014) ....................................................15

*Briggs v. Bd. of Trustees Columbus State Cmty. Coll.*,
  2009 WL 2047899 (S.D. Ohio July 8, 2009) ..............................................11, 13

*Bush v. Dictaphone Corp.*,
  161 F.3d 363 (6th Cir. 1998) .............................................................................16

*Cummerlander v. Patriot Preparatory Acad.*,
  2013 WL 12178140 (S.D. Ohio Sept. 13, 2013) ...............................................12

*Dahmer v. W. Kentucky Univ.*,
  2019 WL 1781770 (W.D. Ky. Apr. 23, 2019) ....................................................11

*Edmonds v. Detroit Public School Systems*,
  2012 WL 5844655 (E.D. Mich. Nov. 19, 2012) .................................................13

*Ellis v. Cleveland Mun. Sch. Dist.*,
  309 F. Supp. 2d 1019 (N.D. Ohio 2004) .....................................................10, 11

*Harco Nat. Ins. Co. v. Sleegers Engineering, Inc.*,
  2014 WL 5421237 (E.D. Mich. 2014) ...............................................................17

*Hashem v. Hunterdon Cty.*,
  2018 WL 2337145 (D.N.J. May 23, 2018) .........................................................11

*Surles ex rel. Johnson v. Greyhound Lines*,
  474 F.3d 288 (6th Cir. 2007) .............................................................................17

*Jones v. Trailways Corp.*,
    1980 WL 338, 33 Fair Empl. Prac. Cas. (BNA) 394 (D.D.C. Dec.
    20, 1980) ...................................................................................16

*Klein Indep. Sch. Dist. v. Mattox*,
    830 F.2d 576 (5th Cir. 1987) .....................................................12

*Maxey v. Sioux City Cmty. Sch. Dist.*,
    2009 WL 35171 (N.D. Iowa Jan. 6, 2009) .................................12

*Miller v. Federal Express Corp.*,
    186 F.R.D. 376 (W.D. Tenn. 1999) ........................................1, 15

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*,
    455 F.3d 690 (6th Cir. 2006) .....................................................11

*Seoane-Vazquez v. Ohio State Univ.*,
    2009 WL 10710390 (S.D. Ohio May 8, 2009) ...........................11

*Stanford v. Parker*,
    266 F.3d 442 (6th Cir. 2001) .....................................................17

*U.S. v. Miami University*,
    294 F.3d 797 (6th Cir. 2002) ...............................................v, 9, 14

*Wallace v. Cranbrook Educ. Cmty.*,
    2006 WL 2796135 (E.D. Mich. Sept. 27, 2006) ........................11

*Williams v. Board of County Commissioners*,
    192 F.R.D. 698 (D.Kan. 2000) ..................................................16

*Wurzelbacher v. Jones-Kelley*,
    675 F.3d 580 (6th Cir. 2012) .....................................................23

**Statutes**

20 U.S.C. §1232g(a)(4).....................................................v, 9, 10, 11

20 U.S.C. §1232g(b)(2)...............................................................13

28 U.S.C. § 636(b)(1)(A)...........................................................v, 6

FERPA ............................................................................*passim*

**Court Rules**

Fed. R. Civ. P. 26 ...................................................................v, 14, 15, 16, 17

Fed. R. Civ. P. 72(a) ...........................................................................v, 6

Fed. R. Evid. 802 ...............................................................................20

Local Rule 7.1(h) ...............................................................................7

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*U.S. v. Miami University*, 294 F.3d 797, 812 (6th Cir. 2002)

*Armstrong v. Shirvell*, 2012 WL 2179120, at *1 (E.D. Mich. June 13, 2012) (Tarnow, J.)

20 U.S.C. §1232g(a)(4)(B)(iii)

20 U.S.C. §1232g(a)(4)(A)

Fed. R. Civ. P. 26(b)

28 U.S.C. § 636(b)(1)(A)

Fed. R. Civ. P. 72(a)

## <u>STATEMENT OF ISSUES PRESENTED</u>

Should the Court overrule Plaintiff's untimely "renewed" objections to the portion of Magistrate Judge Majzoub's *Order Regarding Discovery Motions* (Dkt#132) that properly balanced student privacy interests by allowing Plaintiff access to the names of students who did not object to their disclosure?

## I.    Introduction

Well-after the close of discovery and the filing of Defendants' Motion for Summary Judgment, Plaintiff seeks disclosure of the names of student witnesses who were interviewed by the University of Michigan's Office of Institutional Equity ("OIE") and who specifically objected to disclosure of their names to Plaintiff's counsel. Plaintiff's extremely untimely "renewed" objections to the Magistrate Judge's September 6, 2019 Order (Dkt#132) should be overruled for a number of reasons.

**First**, discovery has closed and Defendants have already filed their Motion for Summary Judgment. It would be prejudicial at this juncture to allow Plaintiff additional discovery, especially where he did not seek this information during the allotted period for Plaintiff to conduct limited discovery after he filed his Third Amended Complaint. **Second**, the student witness names sought by Plaintiff are protected by the Family Educational Rights and Privacy Act ("FERPA"), and even if they were not, the Magistrate Judge properly balanced the privacy interests of the students with the marginal relevance of the information. **Finally**, Plaintiff has not presented any persuasive reason for overturning the Magistrate Judge's order as it relates to student witnesses 1, 3, 5, 8, 9, 10, 12, 13, 15, 17, 20, 23, 26, 30, 32, 38, 44, 47, 51, all of whom objected to the disclosure of their names to Plaintiff's counsel.

Accordingly, for the reasons set forth below, the Magistrate Judge did not abuse her discretion and the Court should overrule Plaintiff's "renewed" objections to the September 6, 2019 Order (Dkt#132).

## II.     Statement Of Relevant Facts

On May 30, 2019, the University produced thousands of pages of documents related to its thorough OIE investigations of Daniels, including more documents than required by the Magistrate Judge's May 29, 2019 Order. (Dkt#94-3).[1]

To protect the identities (including personally identifiable information) of students, the University took appropriate measures to redact minimal information, none of which relates to the substance of Plaintiff's allegations or OIE's findings. In some instances documents were produced in which the original documents referred to students by anonymous witness numbers (*i.e.* "Witness 1") to protect their identities and maintain confidentiality.[2] The substance of each witness statement was not redacted. And, the University provided faculty witness names.

On July 3, 2019, Plaintiff filed a Motion to Compel seeking the names of

---

[1] Although University was only required to produce OIE files "generated between fall of 2015 and August of 2018," (Dkt#86 at 1, n1), the University's supplemental production included documents generated after August 2018 because that is the earliest date when an appropriate person at the University received actual notice of the allegations related to David Daniels and Plaintiff.  Plaintiff never objected to the limited time frame ordered by the Magistrate Judge.

[2] Witnesses are advised that OIE will attempt, where possible, to de-identify their name so that it remains confidential.  (*See* Ex 1, Information for Witnesses).

student witnesses that had been referenced in, or otherwise involved with, the University of Michigan's OIE investigation and report regarding other students' allegations against David Daniels. (Dkt#89).

The University responded to Plaintiff's Motion to Compel on July 16, 2019, arguing that the student witness names were protected by FERPA, and that the students' privacy interests weighed against wholesale disclosure of their names. (Dkt#94). The University also argued that disclosure of the student names was not proportional to the needs of the case. (*Id*.)

On September 6, 2019, Magistrate Judge Majzoub issued a ruling which granted in part, and denied in part, Plaintiff's Motion to Compel.  The Magistrate Judge held that the student witness names were protected by various privacy rights, including FERPA.  The Magistrate Judge then balanced the marginal relevance of the student names with third-party privacy interests, stating that the names could be disclosed only after the students were notified and provided an opportunity to object. (Dkt#132, Order at 4-5, 9-10 PageID.3444-3445, 3449-3450).

On September 20, 2019, Plaintiff filed objections to the Magistrate Judge's Order. (Dkt#146).  On October 4, 2019, Defendants responded. (Dkt#169). While the parties were briefing Plaintiff's objections, at a September 24, 2019 hearing, the Court granted Plaintiff's Motion for Leave to File His Third Amended Complaint and extended discovery for forty (40) days based on Plaintiff's

counsel's representations that she could conduct any additional discovery within that limited time frame. (*See* Dkt#200-2, PageID.5629, 5636).   An Order was later entered setting a discovery completion date of November 4, 2019.  (Dkt#152).

On October 17, 2019, this Court held a hearing on Plaintiff's objections. At the hearing, and in a subsequent order (issued on October 24, 2019), the Court upheld the portion of Magistrate Judge Majzoub's Order requiring the University to allow students an opportunity to object before their names were disclosed. (Dkt#176).  The Court further stated, "If the information those students provide is not sufficient, and if Plaintiff has ground to believe that proving essential elements of his case require testimony by the remaining students, the Court will revisit the applicability of FERPA as to the students who do not wish to be contacted by Plaintiff's attorney."  (*Id.* at 3, PageID.4667).

The University complied with the Magistrate Judge's ruling.[3] Within the timeframes set by the Magistrate Judge's Order, it notified each student witness and stated that their name would be revealed to Plaintiff's counsel unless they objected.   On November 1, 2019, the University sent its First Supplemental Responses and Objections to Plaintiff's First Interrogatories, including the names

---

[3] Plaintiff misleads by implying that the University somehow acted improperly by contacting the student witnesses to ascertain if they objected to the disclosure of their name.  (*See* Dkt#206, FN2-5).  The University never sought a stay of its objections under the Magistrate Judge's Order and no such stay was ever entered. Instead, Plaintiff sought a stay of the performance of "his obligations."  (Dkt#193).

of student witnesses who did not object to disclosure. (Dkt#200-5, PageID.5680-5686). Although not requested as part of Plaintiff's interrogatory and not ordered by the Magistrate Judge or this Court, the University also voluntarily provided additional information requested by Plaintiff's counsel. (*Id.*) This information was provided to Plaintiff's counsel, who asserted that she "need[s] the following basic information to move forward." (Dkt #210-2 (requesting the additional information) and Dkt#200-5, PageID.5683-5685 (providing the additional requested information)). In other words, by November 1, 2019, Plaintiff had all the information he needed to "move forward," including renewing his objections.

The limited forty (40) day discovery extension, which had been granted by the Court based on Plaintiff's counsel's representations at the September 24, 2019 hearing, expired on November 4, 2019. (*See* Dkt#152).

At no point did Plaintiff request any additional information from the University regarding student-witness names after the University provided the same on November 1, 2019. In other words, Plaintiff waited almost two months after this Court upheld the Magistrate's Judge's ruling (Dkt#176), over a month after he had student-witness names, and almost a week after Defendants filed their Motion for Summary Judgment, to file his "renewed" objections.

## III.    Argument

### A.    Standard Of Review

This Court may reverse Magistrate Judge Majzoub's order only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). As this Court has stated:

> Pursuant to that rule, "The district judge in the case must consider timely objections and modify or set aside any part of the [Magistrate Judge's] order that is clearly erroneous or is contrary to law." *Id*. Under 28 U.S.C. § 636(b)(1), a magistrate judge's orders shall not be disturbed unless "found to be clearly erroneous or contrary to law." *See United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). The "clearly erroneous" standard requires the Court to affirm the Magistrate's decision unless, after reviewing the entirety of the evidence, it "is left with the definite and firm conviction that a mistake has been committed." *See Sandles v. U.S. Marshal's Serv.*, 2007 WL 4374077, 1 (E.D. Mich. 2007).

*Armstrong v. Shirvell*, 2012 WL 2179120, at *1 (E.D. Mich. June 13, 2012) (Tarnow, J.).[4] When filing objections, "[t]he objecting party must show how the Magistrate Judge erred and may not simply repeat the arguments presented in the underlying motion." *Adams v. Comm'r of Soc. Sec.*, 2016 WL 1084681, at *3, n2 (E.D. Mich. Mar. 21, 2016). "Indeed, if a party was permitted to simply repeat the arguments it presented to the Magistrate Judge – without attempting to show any error in the Magistrate Judge's analysis – then the 'functions of the district court are effectively duplicated as both the magistrate and the district court perform

---

[4] Unpublished cases attached as Exhibit 4.

identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.'" *Id.* (quoting *Howard v. Secretary*, 932 F.2d 505, 509 (6th Cir. 1991)).

**B.    Plaintiff's "Renewed" Objections Are Untimely And Repeat The Arguments Presented In The Underlying Motion**

Plaintiff's Renewed Objections are untimely. Local Rule 7.1(h) provides fourteen (14) days to file a motion for reconsideration.  But, Plaintiff's Renewed Objections were not filed until one month, three weeks, and four days after the Court's October 24, 2019 Order.  They were also filed one month, two weeks, and four days after the University provided its November 1, 2019 supplemental responses.

As this Court noted in its December 13, 2019 Order which denied Plaintiff's request for an extension of discovery and to compel discovery, "[a] review of the record contradicts Plaintiff's position that he acted with diligence" to conduct any additional discovery related to the student witnesses during the forty-day (40) extended discovery period. (Dkt#201 at 2). Plaintiff had everything he needed on November 1, 2019 to either (a) request additional information from the University regarding student witnesses or (b) renew his objections with the Court or file a motion for reconsideration.  Plaintiff did not at any point during the extended discovery period seek additional information about, or attempt to depose, any student witnesses. He did nothing.

7

Plaintiff erroneously alleges throughout his "renewed" objections that the names of the remaining student witnesses are crucial for the purpose of calling them as witnesses at trial. He also alleges that many of the remaining students are important "comparators." Plaintiff's repetitive arguments, made in his earlier Motion to Compel (Dkt#89) and first set of objections to the Magistrate's order (Dkt#146), are nonsensical in light of his delay. As a practical matter, Plaintiff has had a copy of the final OIE report into Plaintiff's allegations since September 3, 2019, and had access to witness statements beginning in May 30, 2019. Therefore, Plaintiff could have identified any alleged "comparators" during the intervening six months and requested the names of those specific individuals prior to the close of discovery and prior to the filing of Defendants' Motion for Summary Judgment.

In defense of his indolence, Plaintiff disingenuously attempts to shift the blame onto Defendants. Defendants complied with this Court's October 24, 2019 Order (Dkt#176) and could have addressed any concerns Plaintiff had regarding the student names if he or his counsel had raised any before Defendants filed their Motion for Summary Judgment. By his counsel's own admission, on November 1, 2019 she had all the information he needed to "move forward."  But, Plaintiff did not raise any objections or concerns until December 19, 2019, when he filed the instant "renewed" objections.

Per the Court's recent December 13, 2019 Order, Defendants are entitled to

a reasonable expectation of finality, and Plaintiff's attempts to circumvent the direct orders of this Court should not be validated. Therefore, Defendants request that the Court overrule Plaintiff's "renewed" objections to the Magistrate's Order.

**C.    The Magistrate Judge's Order To Disclose The Names Of Students Who Did Not Otherwise Object Properly Balances Student Privacy Interests With Plaintiff's Discovery Needs**

The University produced various documents related to two OIE investigations regarding Daniels. The substance of various witness statements were unredacted, but identifying information regarding student witnesses was redacted, to preserve their confidentiality. After Plaintiff moved to compel the names of these students, the Magistrate Judge issued a carefully crafted ruling that balances student privacy rights. (Dkt#132, PageID.3449-50).

FERPA limits disclosure of "education records" by universities. *U.S. v. Miami University*, 294 F.3d 797, 812 (6th Cir. 2002). Education records are broadly defined as "those records, files, documents, and other materials which (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. §1232g(a)(4)(A).

The OIE investigative reports are not excluded from the definition of educational record. Those files do not "relate exclusively to such person in that person's capacity as an employee and are not available for use for any other

purpose," as Plaintiff asserts. 20 U.S.C. §1232g(a)(4)(B)(iii). In other words, these are not disciplinary records, *i.e.*, information contained in Daniels' personnel record regarding action taken following the investigation.

The cases Plaintiff cites in support of his FERPA arguments are inapposite. While some of those cases stand for the proposition that student witness statements that do not "directly relate" to the educational records of the students are not covered by FERPA, the OIE investigative files here contain information about how Daniels' behavior impacted the student's educational environment.

Despite Plaintiff's insistence otherwise, *Ellis v. Cleveland Mun. Sch. Dist.*, 309 F. Supp. 2d 1019, 1022 (N.D. Ohio 2004) is inapplicable. *Ellis* addressed whether incident reports between students and teachers were covered by FERPA. There, the defendant had refused to produce **any** records related to witness statements. Contrastingly, in the present case, the University produced thousands of pages. Further, *Ellis* does not address the privacy interests of students in the disclosure of their names to opposing counsel, especially where the students were explicitly told that their names would be confidential, nor does it address a court's discretion to limit discoverable information where third-party privacy rights are at

stake.[5]    Moreover, in *Ellis*, the student witness statements that were gathered related to an incident[6] that was directly observed by the witnesses. In the present case, there were, by Plaintiff's own admission, no witnesses to his alleged assault. (Ex 2, Lipian 142). The witnesses at issue in this case, therefore, are describing the impact on their own personal educational experiences, as opposed to simply providing information related exclusively to Daniels as an employee[7] and the actions Daniels took towards Plaintiff. Accordingly, such information indisputably is "directly related" to the students and protected by FERPA.[8]

---

[5] Neither *Briggs v. Bd. of Trustees Columbus State Cmty. Coll.*, 2009 WL 2047899, at *1 (S.D. Ohio July 8, 2009) nor *Dahmer v. W. Kentucky Univ.*, 2019 WL 1781770, at *3 (W.D. Ky. Apr. 23, 2019) are applicable for the same reasons.

[6] In *Ellis,* the plaintiff alleged that her teacher slammed her up against the wall, and the back of her head hit the board, and then slung her on the ground and started choking her in front of a classroom of students. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist*., 455 F.3d 690, 695 (6th Cir. 2006).

[7] FERPA provides an exception for records which "relate **exclusively** to the educational institutions' employees in their capacity as employees and **are not available for any other purpose**." 20 U.S.C. § 1232g(a)(4)(B)(iii) (emphasis added). Here, this information does not relate "exclusively" to Daniels as an employee. Additionally, since the records are part of a Title IX investigation, they cannot fit within the exception of records "not available for any other purpose."

[8] The other cases Plaintiff cites are distinguishable. *Wallace v. Cranbrook Educ. Cmty*., 2006 WL 2796135, at *3 (E.D. Mich. Sept. 27, 2006) did not involve a party's attempt to obtain information about unrelated allegations made by others. Instead, it involved an employee's attempt to obtain information about a complaint made against him. Similarly, in *Seoane-Vazquez v. Ohio State Univ*., 2009 WL 10710390, at *6 (S.D. Ohio May 8, 2009), a **professor** was seeking witness reports that Ohio State relied upon when making the decision to terminate **him**. In *Hashem v. Hunterdon Cty.*, 2018 WL 2337145, at *1 (D.N.J. May 23, 2018), the court did not hold that the names of the students were not protected by FERPA. Instead, it
*Continued on next page.*

Indeed, the Department of Education's Office of Civil Rights ("OCR") January 2001 *Revised Sexual Harassment Guidance: Harassment of Students By School Employees, Other Students, Or Third Parties* confirms that the OIE investigatory records are protected by FERPA. The Guidance states:

> **FERPA is also relevant when a student accuses a teacher or other employee of sexual harassment, because written information about the allegations is contained in the student's education record**. The potential conflict arises because, while FERPA protects the privacy of the student accuser, the accused individual may need the name of the accuser and information regarding the nature of the allegations in order to defend against the charges.

(Guidance at p. viii, *available at* https://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf) (emphasis added).[9]

---

*Continued from previous page.*

held that the plaintiff in that case had met her burden of demonstrating that her needs outweighed the privacy interests of FERPA, which Plaintiff has not done here. *Klein Indep. Sch. Dist. v. Mattox*, 830 F.2d 576, 579 (5th Cir. 1987) relates to the disclosure of a public school teacher's personnel file, not incidents report or harassment investigations where student names were included and is therefore inapplicable. In *Bauer v. Kincaid*, 759 F. Supp. 575, 591 (W.D. Mo. 1991), the plaintiff sought criminal investigation reports, which are clearly not "educational records." *Cummerlander v. Patriot Preparatory Acad.*, No. 2:13-CV-0329, 2013 WL 12178140, at *1 (S.D. Ohio Sept. 13, 2013) is inapplicable because in that case, the plaintiff sought a complaint filed by another student against him for the purpose of litigating against plaintiff's expulsion. Finally, *Maxey v. Sioux City Cmty. Sch. Dist.*, 2009 WL 35171, at *2 (N.D. Iowa Jan. 6, 2009), held that the names and contact information for the student witnesses **were protected by FERPA,** but that the plaintiff in that case had met the heavy burden of demonstrating that disclosure was necessary because the witnesses in that case actually observed the incident in question. No such evidence exists here.

[9] The substantial majority of witnesses that Plaintiff seeks to unmask do not have any personal knowledge about alleged harassment by Daniels towards Plaintiff.

Accordingly, while "the accused individual" might have a need to access this information, other students do not.

Regardless, student privacy rights should not be trampled because Plaintiff seeks to engage on a fishing expedition.[10] In other words, the information must be "otherwise discoverable." *Edmonds v. Detroit Public School Systems*, 2012 WL 5844655 (E.D. Mich. Nov. 19, 2012). And, even if the information is discoverable, FERPA permits the disclosure of protected information in compliance with judicial orders, 20 U.S.C. §1232g(b)(2), after notification to the students (the so-called "litigation exception").[11] 20 U.S.C. §1232g(b)(2)(B). Magistrate Judge Majzoub's Order is directly in line with this provision.

Plaintiff's assertion that the Magistrate Judge's conclusion in *Edmonds v. Detroit Pub. Sch. Sys.*, 2012 WL 5844655, at *4 (E.D. Mich. Nov. 19, 2012) runs contrary to her holding in this case is erroneous. In *Edmonds*, the Magistrate Judge held that student disciplinary records were subject to FERPA. There, the moving party sought disclosure of the "Emergency Suspension Form" of a single student who was accused of assaulting another student. In other words, the information at issue was directly relevant to the claims at issue.  By contrast, at issue here in the

---

[10] Even if FERPA does not apply, Plaintiff is not allowed to engage in a fishing expedition for student names. *Briggs,* 2009 WL 2047899, at *3.
[11] The litigation exception does not, as Plaintiff suggests, require that the Court release the student names.  Instead, the Magistrate Judge retains that discretion.

OIE report are the names of various student witnesses who gave confidential statements regarding issues unrelated to Plaintiff's alleged assault. It is entirely appropriate for the Magistrate Judge to weigh the facts of each case and craft an order reflecting those facts. In the present case, the number of students affected merited additional protections, including allowing those students an opportunity to object to participation in this lawsuit.  In other words, Plaintiff was provided access to all the relevant information he needed in the least restrictive manner possible, regardless of whether FERPA applies or not.[12]

Moreover, FERPA does not prevent a Court from issuing appropriate protective orders under Rule 26(c) to protect third-party privacy rights. Plaintiff relies on the false premise that the Magistrate Judge and this Court do not have discretion to limit discovery to properly balance the privacy interests of third parties with Plaintiff's professed need for discovery. This is plainly untrue; the federal rules of civil procedure expressly provided otherwise. Fed. R. Civ. Pro. 26(b)(1).   Therefore, the limitation placed on the disclosure of student witness names is entirely appropriate under the specific facts of this case.

There is also a vital public interest in protecting the privacy of students. *Miami University*, 294 F.3d at 819 ("In general, a loss of privacy and injury to

---

[12] The discovery period expired and therefore Plaintiff is not entitled to depose the student witnesses before trial.

reputation are difficult to calculate" and noting "that the harm suffered by" students whose school records are published "is irreparable, and by definition, not compensable"). "Courts have imposed a 'significantly heavy burden' on a party requesting the discovery of educational records to show its interests in obtaining the records outweighs 'the significant privacy interests of the students.'" *Black v. Kyle-Reno*, 2014 WL 667788, *2 (S.D. Ohio Feb. 20, 2014) (quoting *Alig–Mielcarek v. Jackson*, 286 F.R.D. 521, 526 (N.D. Ga. 2012)). *See also Miller v. Federal Express Corp.*, 186 F.R.D. 376, 384 (W.D. Tenn. 1999) (when a party requests private information about third-parties, that party must demonstrate "a compelling showing of relevance").

Significantly, Defendants are not relying on the names of any student witnesses. Additionally, the identities of the students interviewed are not relevant to Plaintiff's claims, which focus entirely on what the University actually knew about Daniels' harassment towards Plaintiff, when it knew it, and what actions it subsequently took after it had actual notice of the harassment. Accordingly, each of the reasons above demonstrates that the Magistrate Judge did not abuse her discretion.

## D.   The Magistrate Judge Properly Limited The Scope of Discovery

The Magistrate Judge's Order did not subject Plaintiff to a higher standard for obtaining discovery under the Federal Rules of Civil Procedure. Federal Rule

of Civil Procedure 26 provides for discovery of any matter that is not privileged, so

long as it:

> is relevant to any party's claim or defense **_and proportional to the needs of the case_**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added).

Although relevance is a broad concept, it is not without bounds. "When the relevancy of propounded discovery is not apparent … its proponent has the burden to show the discovery [is] relevant." *Williams v. Board of County Commissioners*, 192 F.R.D. 698, 705 (D.Kan. 2000). Likewise, "It is an abuse of the discovery process to proceed recklessly from the limits of the specific issues to broadside demands attempting to search the universe in hopes that some supporting nugget will emerge." *Jones v. Trailways Corp.*, 1980 WL 338, \*2, 33 Fair Empl. Prac. Cas. (BNA) 394 (D.D.C. Dec. 20, 1980). Thus, in considering the scope of discovery, the Court should balance a party's "right to discovery with the need to prevent 'fishing expeditions.'" *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). In other words, "[t]o determine the proper scope of discovery, a district court should balance a party's right to discovery with the need to prevent fishing expeditions. This approach does not mean oceanic fishing expeditions will be permitted. Much of discovery is a fishing expedition of sorts, but the Federal

Rules of Civil Procedure allow the Courts to determine the pond, the type of lure, and how long the parties can leave their lines in the water." *Harco Nat. Ins. Co. v. Sleegers Engineering, Inc*., 2014 WL 5421237 (E.D. Mich. 2014); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) ("We will not find that a district court erred by denying a fishing expedition masquerading as discovery").

Rule 26 also provides that the Court "***must*** limit the frequency or extent of discovery otherwise allowed by these rules … if it determines that … the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii)(emphasis added). The "district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines*, 474 F.3d 288, 305 (6th Cir. 2007).[13]

In short, the Magistrate Judge had the discretion to place limits on discovery and correctly determined that the privacy interests of students outweighed Plaintiff's need for a fishing expedition. Therefore, there is no reason to disturb the Magistrate Judge's September 6, 2019 Order (Dkt#132).

---

[13] In light of Plaintiff's counsel's eagerness to litigate this case in the press despite this Court's admonition against doing so at the outset, the importance of guarding against Plaintiff's unrestrained access to information about third-parties (*i.e.* students) is heightened.

**E.   Plaintiff Has Not Provided Any Persuasive Reason For The Release Of The Objecting Student Witness Names**

After the University complied with the Magistrate Judge's Order, Plaintiff received the names of twenty-nine (29) student witnesses. He now claims that he is entitled to the names of an additional nineteen (19) witnesses who have objected to involvement with Plaintiff's case.

Plaintiff is not entitled to any additional student-witness names for the reasons above, but also for the additional reason that none of the student witnesses that Plaintiff indicates he "needs" will assist him in proving the essential elements of his claims. As a preliminary matter, unlike Plaintiff, none of the students listed in the OIE report expressed a desire to be considered "complainants," meaning that the student witnesses did not engage in conduct similar to Plaintiff for the purposes of his establishing his claims. (Ex 3, Seney 409-13). Further, to the extent the individuals are male (which includes all but Witnesses 20, 26, 30, 38 and 47), they cannot support his equal protection claims, and none of the female witnesses allege to have been sexual harassed by Daniels. Therefore, none of the individuals listed may be termed "comparators."

Moreover, Defendants have not listed "several" of these witnesses on their trial witness list. Every student witness listed on Defendants' First Amended Witness List (Dkt#114) also appears on Plaintiff's Witness List (Dkt#51). To the extent that any of these shared witnesses were interviewed for the OIE report,

Plaintiff has known about them and had the ability to seek discovery about them for at least eight months. (See Dkt#51, Plaintiff's witness list (filed March 22, 2019) and Dkt#114 Defendant's First Amended Witness List (filed August 14, 2019)). Plaintiff's attempt to deliberately mislead the Court into believing that Defendants intend to rely on additional student witnesses included the OIE report is, therefore, unavailing.[14] Finally, as demonstrated below, the student witness names that Plaintiff requests will not assist him with his claims.

**<u>Witness 1</u>**

Witness 1 is not similarly situated to Plaintiff because he did not bring a complaint against Daniels or the University through the OIE. (*See* Dkt#207-2 at PageID.6727 ("Student 1 stated that he does not wish to participate in an investigation"')). Witness 1 does not claim that he notified anyone about any alleged sexual harassment or assault by Daniels against Plaintiff, and therefore his testimony will not demonstrate any "actual notice" of the same to the University. (*Id*. *See also* Dkt#204, OIE Report at 20). Witness 1 does not claim to have any first-hand personal knowledge of the alleged sexual assault perpetrated by Daniels against Plaintiff in March 2017; in his statement he reiterates only what he was told by Daniels, which is inadmissible at trial since Daniels is not a party to this

---

[14] Plaintiff also misleads by stating that "Defendants have now interviewed each witness," (Dkt#206 at 3). While OIE has interviewed the students, it is undisputed that Plaintiff has copies of those interviews.

lawsuit. Fed. R. Evid. 802. Since Plaintiff claims only to need this information for the purpose calling witnesses at trial, Plaintiff's reasoning for requesting this information is particularly unpersuasive.

## Witnesses 3 and 5

Both Witnesses 3 and 5 are males who were allegedly solicited for sex on the "Grindr" phone application by Daniels. (*See* Dkt# 207-3 and 207-4). Although Plaintiff labels them "non-litigant" comparators, it is clear that, unlike Plaintiff, neither complained about Daniels's alleged advances towards them (which Plaintiff only did after other allegations against Daniels became public). Additionally, neither claims to have been sexually assaulted by Daniels. (*Id.*) It follows, then, that neither are comparators for the purpose of Plaintiff's claims, particularly since Plaintiff expressly disavows ever using Grindr.  (Ex 2, Lipian 90).

## Witnesses 8, 9, 10, 12, 15, 23, 30, 38, and 44

None of these Witnesses claim to have any first-hand personal information about Plaintiff's interactions with Daniels, and therefore, contrary to Plaintiff's assertions, none can support Plaintiff's contention that the University had actual notice of any alleged sexual harassment or sexual assault perpetrated by Daniels against Plaintiff. (*See* Dkt#207-5, 9, 10, 8, 11, 12, 13, 6, 7). To the extent Plaintiff insists that Eugene Rogers had relevant knowledge of Daniels' behavior, Plaintiff

already deposed Rogers, and, in any case, no witness claims that they discussed with Rogers any alleged sexual misconduct related to Plaintiff. As to the female witnesses, 30 and 38, neither alleges that they were subject to sexual harassment by Daniels and therefore they are not similarly situated to Plaintiff.

## Witness 13

Plaintiff falsely claims that, in March 2018, Witness 13 corroborated the allegation that Daniels solicited students for sex on Grindr. (Dkt#207-14). This is untrue; the first time the OIE contacted and spoke with Witness 13 was in November 2018. (*Id*.) This is well-after Plaintiff's alleged sexual assault in March 2017 or any alleged sexual harassment Plaintiff claims to have experienced. Moreover, even if Witness 13 spoke with the OIE in March 2018 regarding Daniels' solicitation of students on Grindr, there is no suggestion that Witness 13 has any information relevant to *Plaintiff's* interactions with Daniels.  Again, Grindr is irrelevant to Plaintiff's claims since he denies ever using it.

Plaintiff also falsely claims that Witness 13 was an "eye-witness to Daniels' sexual harassment of Plaintiff."  (Dkt#206 at 19).  In truth, Witness 13 stated that "Lipian has never told him about any experience he has had with, or concerns he has had about, the Respondent."  (Dkt#207-14).

## Witness 17

Plaintiff has not demonstrated that Witness 17 has any relevant knowledge

21

of Plaintiff's alleged sexual harassment or assault by Daniels. (See Dkt#207-15). Further, Plaintiff is not entitled to Witness 17's name simply because Witness 17 had a positive experience with the OIE on an unrelated matter. This is clearly outside the scope of discoverable information.

**Witnesses 20, 26, 32, 47 and 51**

Witnesses 20, 26, and 47 are all females who do not allege that they were sexually harassed by Daniels, (*See* Dkt# 207-16, 18, 17, 20, 19), nor do they allege that they complained to anyone about Daniels' behavior. Witnesses 26, 32, and 47 do not claim to have any first-hand personal knowledge of Plaintiff's interactions with Daniels. (Dkt# 207-18, 17, 19). At most, Plaintiff states that these students may have knowledge regarding sexual jokes and banter that Daniels may have made to others. These statements are irrelevant as it relates to Plaintiff's interactions with Daniels.

Despite the breadth of student experiences documented in the OIE report, Plaintiff claims that the statements of Witnesses 26 and 51 were specifically gathered to for retaliatory purposes. Although it is clear that Plaintiff takes issue with anyone who disagrees with his version of events, this stated reason alone is not sufficient for overriding the privacy interests of the students, particularly since it ignores the University's obligations under Title IX to investigate the underlying allegations. As Defendants have stated repeatedly, a non-public issuance of an

investigative report that does not wholly agree with Plaintiff's version of events does not constitute an adverse action. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Therefore, Plaintiff is not entitled to the names of these student witnesses simply because he speculates they were interviewed for retaliatory purposes.[15]

## IV.    Conclusion

For the foregoing reasons, Magistrate Judge Majzoub did not abuse her discretion and the Court should overrule Plaintiff's "renewed" objections (Dkt#206).

Respectfully submitted,
Miller, Canfield, Paddock and Stone, P.L.C.
/s/Brian M. Schwartz (P69018)
Attorneys for Defendant
schwartzb@millercanfield.com

Dated: January 2, 2020

---

[15] Although Defendants maintain that Plaintiff is not entitled to disclosure of any witness names, if the Court is inclined to order some disclosure, Defendants state that the disclosure should be limited to Witnesses 1, 20, and 51, the only individuals who may have first-hand personal knowledge and observations of Plaintiff's interactions with Daniels.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 2, 2020, I electronically filed the foregoing paper with the Clerk to the Court using the ECF system which will send notification of such filing to the parties.

/s/Brian M. Schwartz (P69018)
Attorneys for Defendant
schwartzb@millercanfield.com

35015638.2\060548-00447