UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW LIPIAN,                           Civil Action No.: 18-13321
                                         Honorable Arthur J. Tarnow
                    Plaintiff            Magistrate Judge Elizabeth A. Stafford

v.

UNIVERSITY OF MICHIGAN,
*et al.*,

                    Defendants.

_____/


**OPINION AND ORDER GRANTING IN PART
MOTION FOR ATTORNEY'S FEES
AND MOTION FOR SANCTIONS AND TO COMPEL
PLAINTIFF'S TESTIMONY [ECF NOS. 153, 195]**

## I.    Introduction

Plaintiff Andrew Lipian studied vocal music at the Defendant

University of Michigan's School of Music, Theater and Dance (SMTD) from

2016 to 2019.  Professor David Daniels served as a voice professor with

that program from 2015 until he was suspended in August 2018.  Lipian

alleges Daniels sexually harassed him throughout his graduate course of

study and sexually assaulted him in March 2017.  Lipian also claims that

the University and several of its employees and officials ignored warnings

about Daniel's aggressive sexual behavior, causing actionable injuries under 42 U.S.C. § 1983 and Title IX of the Education Amendments.

This case has been plagued by frequent and numerous discovery and pretrial disputes. Now before the Court are the University's motion for attorney's fees associated with responding to Lipian's motion for leave to file a second amended complaint, and the University's motion for sanctions and to compel deposition testimony from Lipian. [ECF No. 153; ECF No. 195]. The Honorable Arthur J. Tarnow referred these motions to the undersigned for hearing and determination, [ECF No. 215], and the Court heard oral argument on them on February 26, 2020.[1] For the reasons below, the Court grants the University's motions, but declines to sanction Lipian or his attorneys from Deborah Gordon Law to the extent requested by the University.

---

[1] The Court has already issued an order on the University's motion to compel the testimony of David Daniels and Scott Walters, and a report and recommendation on the University's motion for sanctions under Federal Rule of Civil Procedure 11. [ECF No. 196; ECF No. 209; ECF No. 239; ECF No. 240]. These motions were also referred to this Court and were heard on February 26.

## II.    Motion for Attorney's Fees

### *A. Background*

On August 12, 2019, Lipian moved for leave to file a second amended complaint (SAC).  [ECF No. 110; ECF No. 110-1].  Two days later, he filed a "corrected" version of his proposed SAC.  [ECF No. 113]. The University responded to Lipian's motion on August 26, 2019.  [ECF No. 121].   Among other arguments, the University asserted that the proposed equal protection counts (Counts II, III and IV) were futile because Lipian failed to plead that he was treated differently than a similarly situated woman.  [*Id.*, PageID.3128].

On August 28, 2019, the Court issued a notice of hearing on the motion for September 3, 2019, the day after Labor Day.  [ECF No. 124]. On August 30, 2019, one business day before the hearing, Lipian filed his reply brief, attaching yet another modification of the SAC as "Exhibit B." [ECF No. 125; ECF No. 125-2].  Lipian represented that the latest modification of his SAC included "a slight revision," suggesting that Exhibit B included a singular and small modification to his proposed SAC [ECF No. 125, PageID.3254, n. 5].  That suggestion was false.  The proposed SAC in Exhibit B added about 30 "male" or "males" to the text as well as over 100 words to the "background facts" stating that the University treated

allegations of sexual misconduct by male victims less favorably than allegations by female victims. [ECF No. 125-2].

On September 3, before the hearing scheduled for that day, the University filed an emergency motion to strike the version of the SAC included as Exhibit B. It argued that, contrary to Lipian's contention that the revisions in Exhibit B were slight, the changes were substantive and effectively conceded that the prior corrected SAC (ECF No. 113) was deficient. [ECF No. 127]. The University also decried Lipian's effort to seek leave to file an entirely new proposed complaint by way of reply brief. [*Id.*]. After the University filed the motion to strike Exhibit B, Lipian withdrew the motion for leave to file the SAC, but stated that he intended to refile the motion later. [ECF No. 128]. The withdrawal of the motion was not a concession by Lipian or his counsel that the University's motion to strike had merit. Gordon states that she withdrew the "viable" motion for leave not because of the points raised in the University's motion to strike, but to allow her to pursue yet another amended complaint with new claims stemming from the University's investigative report that she received the day that she withdrew the motion for leave. [ECF No. 173, PageID.4554-4555; ECF No. 241, PageID.8928-8929].

Judge Tarnow granted in part and denied in part the University's motion to strike. [ECF No. 129]. In the order, Judge Tarnow rejected Lipian's claim that the SAC included "slight revisions," noting that "the changes are potentially far-reaching and directly address deficiencies in his pleadings that were raised in Defendant's response." [*Id.*, PageID.3358]. And Judge Tarnow agreed that Lipian's filing of Exhibit B "a business day before the hearing on whether he should be permitted to amend his complaint, prejudiced [the University] by denying it an opportunity to respond to the most recent version of the Second Amended Complaint and wasting its time responding to the August 14 version." [ECF No. 129, PageID.3358]. To remedy the prejudice, Judge Tarnow ordered Lipian to file a new motion for leave to amend his complaint by September 4, 2019 if he wanted the revisions found in Exhibit B, and that the University would have two weeks to respond. [*Id.*, PageID.3358-3359]. Judge Tarnow also invited the University to "move to recover costs associated with drafting its response to the § 1983 counts of the August 14, 2019 Second Amended Complaint." [*Id.*, PageID.3359].

The University's motion for sanctions followed and has been fully briefed. [ECF No. 153; ECF No. 173; ECF No. 175]. The University

requests sanctions of $11,189.70 under 28 U.S.C. § 1927 or the Court's inherent authority.  [ECF No. 153].

### B. Analysis

1.

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy . . . the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Section 1927 sanctions, among other misbehavior, "aggressive tactics that far exceed zealous advocacy" and thus cause additional expense to the opposing party.  *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).  Sanctions under § 1927 require "a showing of something less than subjective bad faith, but something more than negligence or incompetence."  *Id.*

Sanctions against either a party or an attorney are also available under the Court's inherent authority. *Telechron Inc. v. Intergraph Corp.*, 91 F.3d 144, 1996 WL 370136 (6th Cir. July 2, 1996) (unpublished). The broad discretion under the inherent authority permits the Court to fashion an appropriate sanction for misconduct, including the assessment of attorney fees.  *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d

501, 512 n. 7 (6th Cir. 2002) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). "[A] court's reliance upon its inherent authority to sanction derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *First Bank of Marietta*, 307 F.3d at 512. Sanctions are available under the Court's inherent authority for unethical, obstructive or violative conduct even absent a finding of bad faith, and regardless of whether a rule of civil procedure is "up to the task." *Id.* at 519-20.

<div align="center">2.</div>

The Court finds that Gordon engaged in aggressive tactics that far exceeded zealous advocacy and caused the University additional expense, and that sanctions are warranted to protect the integrity of the proceedings. *Red Carpet Studios,* 465 F.3d at 646; *First Bank of Marietta*, 307 F.3d at 512-13, 519-20. Gordon filed a new version of the SAC, adding about 30 "male" or "males" to the text and over 100 words to the "background facts" one business day before hearing, thus giving the University little time to fairly respond. [ECF No. 125-2]. Those changes were "potentially far-reaching and directly address[ed] deficiencies in his pleadings that were raised in Defendant's response," [ECF No. 129, PageID.3358], but

Gordon's reply brief misrepresented that the new SAC included only "a slight revision." [ECF No. 125, PageID.3254, n. 5].

Gordon points out that she highlighted the changes to the SAC in Exhibit B.  [ECF No. 125-2].  But counsel for the University cannot be faulted for doing due diligence on behalf of his client to verify the extent of the changes, especially given the stealth manner in which Gordon introduced the revisions.  The University thus had to rush to analyze Exhibit B and to file its meritorious motion to strike it.  [See ECF No. 153-2, PageID.3947-3948].

Though Gordon protests that she did nothing wrong, it should have been obvious to her that it was improper to change the proposed SAC in her reply brief.  It is well-settled that a party cannot raise new issues in a reply brief.

> Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further, the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument. As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.

*Sottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (citation and quotation marks omitted).  Here, much more substantially than raising a new issue, Gordon essentially used her reply to *replace* her motion for

8

leave to amend with a new one that featured a different proposed 133-paragraph SAC.  [ECF No. 125-2].  Gordon made her essentially new motion for leave to amend without allowing the University the time to respond required by E.D. Mich. 7.1(e).  The Court finds her maneuvering to be sanctionable.

### 3.

Lipian makes several specious arguments in response to the University's motion for attorney's fees.  [ECF No. 173].  First, despite the fact that Judge Tarnow invited the University to move for sanctions, Lipian charges that the "motion requesting attorney fees is meritless, and borders on professional misconduct," and the "motion for sanctions is meritless, *and Defendant's counsel should have known this*."  [*Id.*, PageID.4549, 4558 (emphasis in original)].  Lipian asserts with no evidence that Judge Tarnow's invitation for the University to move for attorney's fees was merely intended to "placate a perturbed Defendant."  [*Id.*, PageID.4551]. And Lipian argues that Judge Tarnow's order granting in part the University's motion to strike cured the prejudice to the University by giving it more time to respond to the latest version of Lipian's proposed amended complaint.  [*Id.*].  In making this argument, Lipian ignores Judge Tarnow's description of the prejudice to the University as including "wasting its time

responding to the August 14 version" of the SAC.  [ECF No. 129, PageID.3358].

At the February 26 hearing, Gordon continued to disregard the portions of Judge Tarnow's order that described her mischaracterization of Exhibit B as including only "slight revisions" and that described the prejudice to the University.  [ECF No. 241, PageID.8943-8948, referring to ECF No. 129, PageID.3358-3359].  While repeatedly interrupting this Court after it said that it was ruling on the motion, Gordon demanded several times that the Court tell her what she did wrong, as if Judge Tarnow had not already explained her wrongdoing in his order.  [ECF No. 241, PageID.8943-8948].  Gordon opined that she was justified in interrupting and arguing with the Court because "[l]awyers ask questions" and because she found the Court's use of the word "furtive" to be "very unfair and inaccurate."  [*Id.*, PageID.8947-8948].  While asserting that her disrespectful interruptions were caused by this Court's unfairness to her, Gordon steadfastly refused to acknowledge the stealth and misleading way she introduced the SAC she included in Exhibit B, she continued to describe Exhibit B as including "very minor changes"  and "slight revisions," and she blamed defense counsel for not asking for more time to respond. [*Id.*, PageID.8922-8925, 8935-8936].

So, while Gordon was quick to object to the unfairness she perceived from this Court, she refused to acknowledge that her actions crossed the lines of fairness, respect and civility.

4.

Under the lodestar method, courts calculate reasonable attorney's fee awards by "multiplying the proven number of hours worked by a court-ascertained reasonable hourly rate." *Ellison v. Balinski*, 625 F.3d 953, 960 (6th Cir. 2010). Courts have held that, once the lodestar figure is derived, an upward or downward adjustment is permitted based upon twelve factors first listed in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717–19 (5th Cir. 1974).[2] *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). But many of the *Johnson* "factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434, n. 9. And more recently, the Supreme Court discouraged use of the

---

[2] Those factors are: "(1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Johnson*, 488 F.2d at 717–19.

*Johnson* factors except in rare or exceptional circumstances, deeming the lodestar method more objective and reiterating that "the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." *Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 553 (2010) (citation and internal quotation marks omitted). There is a "strong presumption" that the lodestar figure is reasonable, and there are few circumstances in which it should be deemed inadequate. *Id.* at 554.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. Courts review billing claims for "[e]xcessive, redundant, or otherwise unnecessary hours, or hours spent on unsuccessful claims," which are usually excluded from fee awards. *Butcher v. Bryson*, No. 3:12-00251, 2014 WL 4385876, at *3 (M.D. Tenn. Sept. 5, 2014) (citing *Hensley*, 461 U.S. at 437).

As noted, the University requested attorney's fees totaling $11,189.70. [ECF No. 153; ECF No. 153-2]. The amount requested represents 37 attorney hours spent responding to Lipian's motion for leave to file the SAC and filing the motion to strike. [*Id.*]. In line with Judge Tarnow's invitation to move for attorney's fees "associated with drafting its response to the § 1983 counts of the August 14, 2019 Second Amended

12

Complaint," [ECF No. 129, PageID.3358], the University reduced its total bill by 10% to account for the portions of the response that did not relate to the § 1983 claims. [*Id.*].

Lipian does not challenge the hourly rates requested by the University, but he argues that the hours for which the University requests reimbursement are inflated because it reused the research and briefing for the motion for leave to file the SAC in its response to the subsequent motion for leave to file a third amended complaint (TAC). [*See* ECF No. 139]. Lipian attaches copies of both University's responses with the reused arguments highlighted. [ECF No. 173-1, 173-2]. Judge Tarnow granted Lipian leave to file his TAC. [ECF No. 152].

The Court agrees with Lipian that the University's ability to reuse the research and briefing it relied on when responding to SAC undermines its request for reimbursement for the hours used on that work. But Gordon's maneuvering compelled the University to waste time reviewing Exhibit B to the reply brief, comparing it to the August 14 SAC, and drafting the motion to strike the offending Exhibit B. That waste of time remains uncured. The itemized billing from counsel for the University suggests the billing for that work totaled $2,935.00 for 8.1 hours (7 member hours, 1.1 associate hours) for those tasks. [ECF No. 153-2].

The Court thus grants the University's motion for attorney's fees and orders Gordon to reimburse the University $2,935.00.

### III. University's Motion to Compel Lipian's Testimony [ECF No. 195]

#### A. Background

Lipian, Daniels and Scott Walters (Daniel's husband) became friends in 2012, before Daniels was hired as a professor by the University (2015) and before Lipian enrolled as a graduate student in SMTD (2016). From 2012 until shortly before this suit was filed, the three of them exchanged countless text messages, many of them sexual in nature. [ECF No. 204*SEALED*, PageID.6532]. Daniels has said that the voluminous messages show a consensual, social relationship. Lipian asserts that he engaged in the sexual banter only to oblige a professor with tremendous influence over his academic and professional career.

Text messages between Lipian and Daniels suggest a physical sexual encounter occurred between March 22 and March 24, 2017. [*Id.*, PageID.6533-6539]. Lipian alleges that Daniels served him bourbon and Ambien, which Daniels claimed was Tylenol PM, before forcing himself on Lipian and touching his genitals and face. [ECF No. 150, PageID.3846-3847, ¶ 75]. Lipian reported the alleged assault to another SMTD professor on August 23, 2018, one day after another man's allegations

against Daniels and Walters were detailed in a *New York Daily News* article.  [ECF No. 204*SEALED*, PageID.6502, 6539].

The motion here is part of a continuing battle between the University and Lipian to question him about the extent of his relationship with Walters. The University previously moved to compel Lipian's deposition testimony after he refused to answer questions about his relationship with Walters during his July 2019 deposition.  [ECF No. 101].   Magistrate Judge Mona K. Majzoub ordered Lipian to appear for the continuation of his deposition to answer the questions he refused to answer.  [ECF No. 132].  Judge Tarnow sustained in part Lipian's objection to Judge Majzoub's order, ruling that the University

> will not be entitled to ask questions about Lipian's sexual history with people unconnected to the allegations in this case. Any relationship [Lipian] may have had with Scott Walters, however, may pertain to allegations in this case.  Defendants are entitled to discovery on whether or how communications and conduct between Lipian and Walters affected or illuminated Lipian's relationship with Daniels.  This line of inquiry will be limited.  Questions presented to Lipian regarding Walters on matters not connected to Daniels must be of a generic and abstract nature.  Probing questions into specific acts or speech are precluded.  On events or communications where Daniels was either present or discussed, however, questions can be more detailed and specific, but only where calibrated to produce information on Lipian's interactions with Daniels.

[ECF No. 176, PageID.4668-4669].   At the hearing that preceded the order, Judge Tarnow explained that counsel for the University could not ask

15

"whether they kissed on the mouth or whatever other details," but could "ask about the relationship and when."  [ECF No. 177, PageID.4709].

At the continuation of Lipian's deposition, he followed Gordon's instruction to refuse to answer questions about his relationship with Walters that the University argues are permissible under Judge Tarnow's order. The University also argues that Gordon obstructed testimony by openly coaching Lipian and interrupting questions and responses with interjections to steer or otherwise thwart testimony.  [ECF No. 195].  Lipian responds that the University's motion is frivolous because the questions posed by Gordon at the continued deposition were outside the scope of Judge Tarnow's order and largely duplicative of those asked in the initial deposition.  [ECF No. 208].

### B.    Analysis

#### 1.

An attorney may not impede, delay or frustrate "the fair examination of the deponent."  Fed. R. Civ. P 30(d)(2).  Thus, she may order her client "not to answer *only* when necessary to preserve a privilege, to enforce a limitation ordered by the court to answer a question."  Fed. R. Civ. P. 30(c)(2) (emphasis added).  The attorney may also stop the deposition and then "present a motion under Rule 30(d)(3)" to "terminate or limit it on the

ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Rule 30(c)(2) and (d)(3).  On such a motion, "*the court* may order that the deposition be terminated or may limit its scope"; that is not the province of the objecting attorney.  Rule 30(d)(3)(B) (emphasis added).

"It is the attorney's job to make an objection and then stop talking. If the deponent does not know how to answer a question, he or she may state as much, but it is not appropriate for his or her attorney to push him or her in that direction."  *Freedom's Path at Dayton v. Dayton Metro. Hous. Auth.*, 2018 WL 2948021, at *8 (S.D. Ohio June 13, 2018) (internal citations and quotation marks omitted).  Indeed, all counsel for the deponent may "do is state a concise, nonargumentative, and nonsuggestive objection on the record and instruct [the] witness not to answer in the limited circumstances laid out in Rule 30(c)(2)."  *Id.; see also Montiel v. Taylor*, 2011 WL 1532529, at *3 (E.D. Tenn. Apr. 21, 2011) ("Rule 30(c)(2) allows non-examining counsel at a deposition to do one of two things: (1) listen and (2) make objections.").

Efforts to interject party positions into the course of a deposition inquiry is improper and violative of Rule 30(c)(2). *See Freedom's Path*, 2018 WL 2949021, at *8 (citing *Little Hocking Water Ass'n, Inc. v. E. I. Du*

*Pont de Nemours & Co.*, 2013 WL 6632678, at \*15 (S.D. Ohio Dec. 17, 2013)).  The deponent is responsible for seeking clarification of a deposing attorney's question he does not understand; "it is not proper for counsel for the deponent to ask the deposing attorney to clarify a question."  *Cullen v. Nissan North America, Inc.*, 2010 WL 11579750, at \* 6 (M.D. Tenn. Feb. 2, 2010).  If counsel for deponent perceives a need to clarify the witness's testimony, "that attempt must await the completion of plaintiff's inquiry."  *Little Hocking Water Ass'n*, 2013 WL 6632678, at \*15.  In *Freedom's Path*, the court admonished counsel from inserting "if you can" or "if you know" and other suggestive comments in his objections, noting that repeatedly interrupting questioning with such comments "can plausibly be seen as coaching the witness."  2018 WL 2948021, at \*8 (internal citations and marks omitted).

But improper speaking objections to suggest responses or otherwise coach a witness do not necessarily warrant sanctions, or even an order to reconvene the deposition or to permit other additional discovery.  *See id.* at \*19; *Cullen*, 2010 WL 11579750, at \* 8.  Courts assess whether the inappropriate interjections and other improper obstruction actually impeded deposing counsel's questioning or the witness' testimony.  *See Little Hocking Water Ass'n,* 2013 WL 6632678, at \*15-19; *Cullen,* 2010 WL

11579750, at *8. If the questioning attorney remains undeterred and perseveres in the questioning to elicit substantive responses from the deponent, courts have declined to continue the deposition. *Id.*; *Cullen*, 2010 WL 11579750, at *8. But when an attorney has frustrated a fair examination of the deponent, courts will order the deponent to sit for a new trial. *FedEx Corp. v. United States*, No. 08-2423 MA/P, 2011 WL 2023297, at *11 (W.D. Tenn. Mar. 28, 2011).

2.

Here, Gordon's constant objection, interjection and instruction to Lipian not to answer the questions thwarted virtually all substantive testimony, including that which was permitted under Judge Tarnow's ruling. For example, counsel for the University, Brian Schwartz, asked if Lipian had any sexual contact with Walters on a night Lipian slept at Walter's and Daniels' apartment, with the caveat that he did not "need to know the details." [ECF No. 198-1, PageID.5534]. Gordon responded that this was not allowed by the order, and she instructed her client not to answer. [*Id.*]. This question was permissible under Judge Tarnow's ruling. It pertained to the relationship between Walters, Daniels and Lipian; whether the question was detailed or specific, it was permissibly so because it was about a time when Daniels was present. [ECF No. 176, PageID.4668-4669 ("On events

19

or communications where Daniels was either present or discussed, however, questions can be more detailed and specific . . . .")].  Gordon continued obstructing the University's counsel from asking variations of this question throughout the deposition.  [No. 198-1, PageID. 5531-5535].

Gordon also refused to permit Lipian to answer other general questions relating to his and Walters communications and conduct, such as whether Walters had ever slept at Lipian's apartment.  [*Id.*, PageID.5535]. She reasoned that Lipian did not have to answer questions about his interactions with Walters for periods when Daniels was not present.  [*See e.g.,* ECF No. 198, PageID.5536, 5541, 5543-5545].  For example, Schwartz asked Lipian if he ever had dinner with Walters "at the Daniels-Walters apartment."  [ECF No. 198-1, PageID. 5536].  Gordon interjected, "Unless David was there, he's not going to answer."  [*Id.*].  But Judge Tarnow allowed the University to ask (1) questions about "Walters on matters *not connected* to Daniels" of "a generic and abstract nature"; and (2) detailed and specific questions "[o]n events or communications where Daniels was *either* present *or discussed*."  [ECF No. 176, PageID.4668-4469 (emphasis added)].  That being the case, Gordon had no grounds to instruct Lipian not to answer nondetailed questions about Lipian's

interaction with Walters when Daniels was not present or to preempt any inquiry into Lipian's discussions with Walters about Daniels in his absence.

Gordon also instructed Lipian not to answer questions that she says were answered in the prior deposition. [ECF No. 198, PageID.5538-5539, 5542-5543, 5546]. But Judge Tarnow's order did not instruct that the University could not re-ask questions, and "asked and answered" is not a proper objection during a deposition. *First Tennessee Bank v. Fed. Deposit Ins. Corp.*, 108 F.R.D. 640, 641 (E.D. Tenn. 1985) (new deposition ordered because counsel improper instructed deponent not to answer because question was answered in an earlier deposition). Gordon could have stopped the deposition and moved for a protective order under Rule 30(d)(3). *Id.* But she was not permitted to be the arbiter of whether the subject matter of a question had been sufficiently covered by questions during the first deposition and instruct Lipian not to answer. *Id.*

In addition to Gordon's liberally-applied instruction not to answer, she interjected continuously, suggesting or even directing Lipian's answers:

Q.    You don't recall who was there, correct?

Ms. Gordon: He doesn't recall, I think is what he said.
Mr. Schwartz: Sure
Ms. Gordon: But you can answer.
The Witness: Yeah, I don't recall who was there.
Mr. Schwartz: Okay.
Ms. Gordon: If anybody.

The Witness: If anybody.

[ECF No. 198-*1,* PageID. 5541]; injecting commentary and interpretation:

Q.    Any sexual activity that occurred with Scott Walters?

Ms. Gordon: Is this the—excuse me.  Is this
     the pillows testimony or different testimony?
                        ***
Mr. Schwartz: Just for the record, counsel was conferring.
                        ***
Mr. Schwartz: It's December 18, 2016.  So—
Ms. Gordon: I know.  Yeah.  My client said he thinks it's
the pillows night.

[*Id.*, PageID.5538-5539]; and interrupting Lipian's answers and University counsel's questions. [*See e.g., id.*, PageID.5539-5540, 5542].

Although Schwartz is an experienced attorney and a leader in a top Detroit law firm, his examination of Lipian was substantially stymied by Gordon's pervasive instructions not to answer, her suggestive and obstructive speaking objections and her other inappropriate interjections. [ECF No. 198-1, PageID.5532-5533].  During the deposition, the attorneys recognized the impact of Gordon's disruptions.  Schwartz called the it "the most obstructive deposition I have ever taken," and Gordon observed that he was "very angry" and "very flummoxed."  [*Id.*].

22

3.

Gordon's obstructive objections and interjections provide a vivid illustration of why attorneys are not permitted to make and grant their own objections during depositions. She faults Schwartz for failing to call Judge Tarnow, whose practice guidelines say, if "problems arise in a deposition and counsel need immediate guidance from the Court, you may call me at (313) 234-5180, fax (313) 234-5492."[3] Those same guidelines discourage attorneys from impeding legitimate questions and interjecting with more than a few nonspeaking objections during depositions:

> The lawyer defending a witness at a deposition should not impede the legitimate interrogation of that witness. Since all objections, other than as to form or dealing with privilege, are preserved for trial, I expect that objections will be few in number and will not be 'speaking objections;' i.e., those calculated to suggest an answer to the witness or impede legitimate questions. See FRCP 30(d)(i) and 32(d)(3).[4]

Gordon did not heed these instructions. And Judge Tarnow's statement that attorneys "may" call him for immediate guidance during a deposition in no way relieved Gordon of her obligation to stop the deposition to move for a protective order if she thought questions about nonprivileged matters

---

[3]
https://www.mied.uscourts.gov/index.cfm?pageFunction=chambers&judgeid=17

[4] *Id.*

should not be asked, as opposed to taking upon herself to order Lipian not to answer questions.

The Court finds that Gordon actually frustrated Schwartz's questioning of Lipian, and thus orders that Lipian appear for another deposition. *FedEx Corp.,* 2011 WL 2023297 at *11. This deposition will be under the same parameters set by Judge Tarnow. [ECF No. 176, PageID.4668-4669; ECF No. 177, PageID.4709]. The Court will add no more limitations, as that would likely only fuel more objections outside of those allowed under Rule 30(c)(2). Lipian and his counsel must pay the costs of the continued deposition. No other sanctions will be imposed at this time, but Gordon is **warned** that her failure to comply with this order will subject her to penalties that may include a finding that she is in contempt of court and dismissal of all or parts of Lipian's complaint. *See* Fed. R. Civ. P. 37(b)(1) and (b)(2).

## IV. CONCLUSION

The University's motion for attorney's fees [ECF No. 153] is **GRANTED IN PART**, and Gordon must pay the University **$2,935.00**.

The University's motion to compel Lipian's testimony [ECF No. 195] is **GRANTED IN PART.** Lipian shall sit for another deposition under the

same parameters set by Judge Tarnow.  Lipian and his counsel must pay the costs of the continued deposition.

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of 14 days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 11, 2020.

<div style="margin-left:40%">
s/Marlena Williams<br/>
MARLENA WILLIAMS<br/>
Case Manager
</div>