UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW LIPIAN,

            Plaintiff,

v.

UNIVERSITY OF MICHIGAN,

            Defendant.

_____/

Case No. 18-13321

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

**ORDER DENYING DEFENDANT'S MOTION TO CERTIFY AN INTERLOCUTORY APPEAL [261]; DENYING DEFENDANT'S MOTION TO STAY [262; OVERRULING DEFENDANT'S OBJECTION TO THE MAGISTRATE JUDGE ORDER [243]; OVERRULING IN PART AND SUSTAINING IN PART PLAINTIFF'S OBJECTIONS ON THE MAGISTRATE JUDGE'S ORDER [249]; AND DENYING DEFENDANT'S RENEWED MOTION FOR SANCTIONS [264]**

On April 9, 2020, the Court granted in part and denied in part Defendant's Motion for Summary Judgment. (ECF No. 247). Count I of Plaintiff's Third Amended Complaint—alleging Title IX violations against the University of Michigan—is the only cause of action proceeding to trial. Several motions and objections remain, however.

The Court will first consider Defendant's motions to stay the case and certify an interlocutory appeal. Next the Court will consider Defendant's renewed motion for sanctions, and, finally, it will consider the objections to various rulings by the Magistrate Judge.

# I.   Defendant's Motion to Stay the Case and Certify an Interlocutory Appeal [261, 262]

Defendant has moved for an interlocutory appeal. Specifically, it wants to appeal, before a final judgment, the Court's holding denying summary judgment as to Count I of Plaintiff's Third Amended Complaint—the University of Michigan's alleged violation of Title IX.

## STANDARD OF REVIEW

28 U.S.C. § 1292(b) provides that a party may file such an appeal in the following circumstances.

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order. *Id.*

## ANALYSIS

Provided that three conditions are present, the Court should certify an appeal of its ruling on Defendant's motion for summary judgment on Plaintiff's Title IX claim. Those conditions are as follows:

> "[1] the order involves a controlling question of law to which there is [2] substantial ground for difference of opinion and ... [3] an immediate

appeal may materially advance the termination of the litigation." *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017).

Because this is a conjunctive test, the Court will not proceed past its finding that the first factor is not met. Defendant argues that the following controlling question of law is presented.

> Did the Court apply the correct standard when it determined that Title IX's "actual notice" requirement can be satisfied by notice based on rumors of Daniels' sexual promiscuity unrelated to Plaintiff? (ECF No. 261, PageId.9867).

There are two reasons that this question is not "controlling," however.

First, it is a strawman of the Court's holding. Looking to applicable case law, the Court found that "once on notice that a faculty member has sexually harassed others, the school is on notice that he may harass more students." (ECF No. 257, pg. 32). Looking then to the facts in the light most favorable to Plaintiff, the Court concluded that "whatever his sources were, West appears to have had actual knowledge at the time of his hire that Daniels was inclined to pursue sexual encounters with his students, in violation of the U of M Standard Practice Guides ("SPG")." (*Id.*). The Court has held that an "appropriate person" may receive actual notice under Title IX by being told that a professor has proclivities to sexually pursue his or her students.

Defendant's focus on rumors and promiscuity misconstrues the Court's holding. Though the question Defendant wants to present to the Court of Appeals

was never presented to the Court—because the Court never had the opportunity to review the facts taken in the light most favorable to Defendant—it can readily conclude that rumors of sexual promiscuity do not trigger Title IX actual notice. The lines between warning and rumor, and between sexual promiscuity and sexual aggression, are exactly the lines which must be drawn by juries, not judges.

The Court will not certify a question to the Sixth Circuit that is obvious and which, if answered, would do nothing to resolve the case. Put differently, if Defendant proves that the closest thing that West received to notice was rumors of Daniels' promiscuity, it will likely be entitled to a directed verdict or a jury verdict on the issue of harassment before March 2018. If the Sixth Circuit agreed with Defendant's uncontroversial statement of law—that it would be legal error to hold that Title IX's "actual notice" requirement can be satisfied by notice based on rumors of Daniels' sexual promiscuity unrelated to Plaintiff—a trial would still be necessary to determine if the University's notice was more substantial than mere rumors and of behavior more problematic than mere promiscuity.

That raises the second reason that this question is not controlling. Even if the Sixth Circuit definitively ruled out the possibility that Defendant received actual notice of Daniels's conduct through West, the case would still need to proceed to trial on the post-March-2018 factual questions. Factual questions remain as to whether the OIE investigation into Daniels's alleged criminal activity in Grindr

constituted actual notice of his proclivities, whether its response to that notice amounted to deliberate indifference, and whether Lipian was sexually harassed as a result of this deliberate indifference. Defendant's proposed legal question regarding pre-hire notice of Daniels's behavior is not controlling, because its resolution would not determine the case.

The reason that there is no obvious or neat question of law to present to the Sixth Circuit is that different questions may be presented depending on the answers of different factual questions. This case, in other words, is like most other cases, where appeal follows trial, not vice versa. Rather than ask the Court of Appeals for an advisory opinion on the facts as it sees them—before West has ever testified under oath—Defendant must abide by the normal appellate procedures and seek resolution of its legal question based on the actual facts in the case, as revealed at trial, not as speculated on by the parties.

Having determined that certification of an interlocutory appeal would not be appropriate, the Court will decline to stay the case so that such an appeal can proceed. As a practical matter, however, the case is already stayed. With a few minor exceptions, discovery has been completed and a trial will not be held at least until the court is reopened.

## II.   **Defendant's Renewed Motion for Sanctions [264]**

On December 20, 2019, Defendants filed a Motion for Sanctions alleging that Plaintiff misquoted and mischaracterized the Office of Institutional Equity Report in its Third Amended Complaint. (ECF No. 209). That motion was referred to the Magistrate Judge, who advised the Court to deny the motion without prejudice on the grounds that it would be better adjudicated after the Court ruled on the pending dispositive motions. (ECF No. 240). The Court agreed, adopted the Magistrate Judge's Report and Recommendation, and denied the motion without prejudice. (ECF No. 258). On May 6, 2020, Defendant brought a renewed Motion for Sanctions. (ECF No. 264). This motion will be denied with prejudice.

### STANDARD OF REVIEW

Rule 11 of the Federal Rules of Civil Procedure provides, in relevant part, as follows.

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

Fed. R. Civ. P. 11(b).

"Attorneys must reasonably investigate factual allegations and legal contentions—including their frivolity—before filing a complaint with a federal court." *Darnell v. Arthur*, 782 F. App'x 413, 416 (6th Cir. 2019). The key inquiry is whether the attorney's conduct was "unreasonable" given the circumstances. *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 833 (6th Cir. 2005).

Rule 11 also contains a safe-harbor provision. A motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." FED. R. CIV. P. 11(c)(2); *see also Ridder v. City of Springfield*, 109 F.3d 288, 295 (6th Cir. 1997) (explaining the design and effects of the safe-harbor provision).

## ANALYSIS

The University of Michigan's Office of Institutional Equity released its report, Daniels/Lipian on September 3, 2019, the same day that the Court—following the abortive briefing on Plaintiff's flawed second amended complaint—gave Plaintiff one day to file its Third Amended Complaint. Plaintiff did so and incorporated elements of the 46-page OIE Report into the Amended Complaint. There were errors, including misquotations, and, on November 27, 2019, Defendants served Plaintiff with the original motion for sanctions based on these misquotations. (ECF

No. 264-2). On December 16, 2019, within the 21-day safe harbor provision of Rule 11(c), Plaintiff stipulated to removal of the quotation marks from Paragraph 143 of the amended complaint, but he otherwise refused to alter the amended complaint, arguing that the characterizations of the OIE Report represent its "implied conclusions." (ECF No. 264-6).

Defendant takes issue with the bold portions of the following paragraphs.

143. **Defendant also made biased findings against Plaintiff** in its Final Report of Investigation, **including that because he did not risk retaliation by overtly opposing Daniels' behavior he "more than likely engaged in a consensual relationship" with Daniels.**

146. If Plaintiff had been female, **Defendant would not have come to the conclusion that he lied about being sexually assaulted and harassed by Daniels.**

154. Thereafter, Defendant took adverse action against him by **finding that it was more likely than not that he falsely claimed to have been sexually assaulted and harassed by Daniels**. In order to come to this conclusion, Defendant necessarily also concluded—implicitly and explicitly—**that Plaintiff lied** about both his sexual orientation and the fact that Daniels' overtures were unwelcome to him, and that found that Plaintiff engaged in infidelity and sexually promiscuous acts.

179. Despite the fact that there is no evidence that Plaintiff consented to harassment and assault by Daniels, because of Plaintiff's gender, Seney found she could not conclude on a preponderance of the evidence that Daniels had sexually harassed or assaulted Plaintiff. In spite of this finding, **Seney launched into a multi-page detailed analysis deriding Plaintiff for his behavior towards Daniels, blaming him for Daniels' actions. Because of Plaintiff's gender, Seney concluded it was more likely than not that Plaintiff lied about being harassed and assaulted by Daniels, and that what happened to him was his own fault.**

207. Despite the fact that there is no evidence that Plaintiff consented to harassment and assault by Daniels, Seney found she could not conclude on a preponderance of the evidence that Daniels had sexually harassed or assaulted Plaintiff. In spite of this finding, **Seney launched into a multi-**

**page detailed analysis deriding Plaintiff for his behavior towards Daniels, and blaming him for Daniels' actions. Because of Plaintiff's exercise of his right to free speech, Seney concluded that it was more likely than not that Plaintiff lied about being harassed and assaulted by Daniels, and that what happened to him was his own fault.**

255. Defendants thereafter published their final report of the OIE investigation into Plaintiff's allegations against David Daniels, **concluding that it was more likely than not that he lied about being assaulted and harassed by Daniels**. The OIE wrote a 40-plus page report **detailing its findings that Plaintiff not only lied about Daniels' harassment and assault but also about his sexual orientation, and found that he engaged in infidelity and sexually promiscuous acts.** These findings were intentionally calculated to result in the loss of Plaintiff's reputation, future employment opportunities, honor and good standing in the community.

(ECF No. 150, TAC, ¶¶143, 146, 154, 179, 207, 255, PageID.3860, 3861, 3862, 3867, 3873, 3884-85 (emphasis added by Defendant)).

Defendant argues that these allegations are groundless and unsupported by the OIE Report. The OIE Report, it observes, never stated that Lipian lied about Daniels, nor did it conclude that Lipian in any way invited Daniels's behavior. Defendant is correct that the OIE Report studiously avoided making a direct statement impugning Lipian. That does not mean that Lipian's allegations were groundless, however. As the Court has already found, the OIE Report derided Lipian.

The Report is also shockingly mean-spirited. Though its conclusions are nonjudgmental, the anonymous student statements used as sources appear to go out of their way to impugn Lipian's character. The Court is deeply troubled that the University's response to a sexual harassment complaint is to publish a document filled with innuendo and rumor regarding the complainant's sexuality, lifestyle, and personality. The OIE has managed

to demonstrate a callous disregard for both the privacy of its students and the integrity of its investigation.

(ECF No. 157, pg. 49).

Indeed, the narrator of the OIE Report doesn't need to make explicit conclusions, because the content and organization of the witness statements speaks volumes on their own. Anonymous sources are quoted suggesting that Lipian acted "gay-ish" and flirtatiously. (*see e.g*., ECF No. 204, PageId. 6521, 6524). Defendant has not proven that there is no basis for Plaintiff's characterization of the report.

Plaintiff and his counsel will not be sanctioned for using paraphrasing to demonstrate the harshness of the OIE Report. It was a harsh report, and the fact that its harshness was implicit rather than explicit does not strip the pleadings of factual support. Even if it did, Plaintiff filed the OIE Report on the docket. There was never any indication that he sought to mislead the Court as to the nature of its contents. With the exception of paragraph 143—where the quotations were stipulated to be stricken within the safe harbor provision—the pleadings quoted above are reasonable. Defendant's renewed motion for sanctions will therefore be denied.

### III.    Appeals of Magistrate Judge Rulings

#### STANDARD OF REVIEW

Rule 26 of the Federal Rules of Civil Procedure provide the following on the scope of civil discovery.

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b).

Despite the broad powers given to a reviewing Court to weigh the many interests impacted by a discovery request, a district judge reviewing a Magistrate Judge's ruling on a non-dispositive matter does so according to the "clearly erroneous" or "contrary to law" standard of review set forth in Rule 72(a). FED R. CIV. P. 26(a); *see also* 28 U.S.C. § 636(b)(1)(A). Some courts have delineated between "clearly erroneous" and "contrary to law," reasoning that the former standard applies to factual findings and the latter to legal conclusions. *Gandee v. Glaser*, 785 F.Supp. 684 (S.D. Ohio 1992).

Factual findings are accorded great deference. The "clearly erroneous" standard does not permit a district court to reverse the magistrate judge's finding

simply because it would have decided the issue differently. *Anderson v. City of Bessemer*, *N.C.*, 470 U.S. 564, 573 (1985). Rather, a "finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Legal conclusions are afforded less deference. "This Court is free to exercise its independent judgment with respect to the legal conclusions reached by the Magistrate." *Hawkins v. Ohio Bell Tel. Co.*, 93 F.R.D. 547, 551 (S.D. Ohio 1982), aff'd, 785 F.2d 308 (6th Cir. 1986).

## ANALYSIS

A. Defendant's Motion for Attorneys' Fees (ECF No. 153)

Plaintiff filed his Motion for Leave to File his Second Amended Complaint on August 12, 2019. (ECF No. 110). The proposed amended complaint was attached as Exhibit A. (ECF No. 110-1). Defendants, in their response to the motion, observed that certain counts of the complaint would be futile because they did not actually plead the elements of the cause of action they alleged: specifically that the proposed complaint did not plead that Plaintiff was treated worse than similarly situated females in his gender discrimination claims. (ECF No. 121, PageId.3127). On August 28, 2019, the Court set a hearing on the motion to amend for September 3, 2019. (ECF No. 124).

Plaintiff attempted to remedy the shortcomings of the second amended complaint in his August 30, 2019 reply brief. (ECF No. 125). Attached as Exhibit B was a corrected amended complaint. (ECF No. 125-2). The changes were highlighted in yellow. (*Id.*). On September 3, the morning of the hearing, Defendants filed an Emergency Motion to Strike [127] Exhibit B. Very shortly thereafter, Plaintiff withdrew the whole motion. (ECF No. 128). That same morning, before the scheduled hearing, the Court granted the motion to strike and set a briefing schedule for Plaintiff to start over and file a third amended complaint. (ECF No. 129).

The Court recognized that Plaintiff's late-filed correction to the proposed amended complaint were more substantive than typographical. "Though Plaintiff characterizes the corrections as "slight revisions" in a footnote to his motion (Dkt. # 125; pg. 8), the changes are potentially far-reaching and directly address deficiencies in his pleadings that were raised in Defendant's response." (*Id*. at pg. 2). The Court found that Plaintiff's actions had prejudiced Defendant. Rather than simply ruling on the original second amended complaint on the merits, which would have meant the certain dismissal of several of Plaintiff's causes of action, the Court provided that Plaintiff could redo the whole motion to amend process. To compensate for the Defendant's time this wasted, the Court allowed the University to "move to recover costs associated with drafting its response to the § 1983 counts of the August 14, 2019 Second Amended Complaint." (*Id*. at pg. 3).

Unsurprisingly, Defendant did just that, and, on September 27, 2019, it moved for attorneys' fees. (ECF No. 153). This motion, with several others, was referred to Magistrate Judge Elizabeth A. Stafford for resolution on December 27, 2019. The Magistrate Judge held a hearing on February 26, 2020 and ruled that Plaintiff was responsible for the costs associated with drafting Defendants' Emergency Motion to Strike Exhibit B [127]. (ECF Nos. 241, 242).

Plaintiff objected to this order on March 25, 2020 (ECF No. 249). He mustered four objections. First, he argued that the Magistrate abused her discretion by awarding attorney fees associated with Defendants' Motion to Strike, when the Court permitted Defendant to 'move to recover costs associated with drafting its response to the 1983 counts of the August 14, 2019 Second Amended Complaint." Second, he argued that the Magistrate Judge based her decision on erroneous factual conclusions. Third, he argued that the Magistrate Judge's legal conclusions were contrary to law. Fourth, he argued that the Magistrate Judge's award of $2,935 in fees for Defendant's motion to strike was too high.

The Magistrate Judge outlined the legal standard for § 1927 sanctions as follows:

> "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy . . . the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 sanctions, among other misbehavior, "aggressive tactics that far exceed zealous advocacy" and thus cause additional expense to the opposing party. *Red Carpet Studios*

> *Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). Sanctions under § 1927 require "a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Id.*

(ECF No. 242, PageId.8990).

Plaintiff first objects that the Magistrate Judge's remedy exceeded this Court's authorization. It did no such thing. While this Court noted that Defendant could offset the prejudice it suffered by Plaintiff's late-filed corrected Second Amended Complaint, its notation was not a limitation. Defendant sought attorneys' fees, as the Court said that it could, and the Magistrate Judge used her discretion to craft a remedy. More importantly, Defendant included time spent working on the motion to strike as billable hours "associated with" the response to Plaintiff's second amended complaint in its lodestar calculation on its motion for attorney fees. Plaintiff never argued that the motion to strike hours should be excluded. He cannot raise the argument for the first time on an objection *See Murr v. United States*, 200 F.3d 895, 902 n. 1 (6th Cir. 2000) ("Courts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate."). Nor is it clear why he should want to, as the fees incurred by the response to the motion to amend his complaint are far greater than those incurred by the much shorter motion to strike.

Plaintiff next argues that the Magistrate Judge erred by deeming his counsel's behavior "stealth" or "furtive." He argued that Plaintiff's counsel was straightforward, and not at all furtive, about the changes in Exhibit B. Plaintiff's counsel intended to discuss the matter at the hearing, so that either Defendant could be given more time to file another response, or so that she could file a new amended complaint to include causes of action arising from the recently released OIE Report. (*Id*.).

Plaintiff is correct that the additions to the Second Amended Complaint in Exhibit B were neither deceptive nor furtive. The changes were highlighted and discussed with defense counsel over email. Characterizing the changes as "a slight revision," however, was an understatement that strains credulity. Ultimately, however, Plaintiff's counsel's motives are irrelevant, for, in contrast with Plaintiff's third objection, bad faith or intent to deceive are not prerequisites for § 1927 liability. Plaintiff's counsel engaged in an unreasonable maneuver to paper over an error, which cost Defendants a considerable number of billable hours. Her conduct was unreasonable, and it was subject to § 1927, because it "knowingly disregard[ed] the risk that his actions will needlessly multiply proceedings." *Red Carpet Studios*, 465 F.3d at 646. One mistake is par for the course in complex litigation, but when Plaintiff sought to correct his mistake by filing Exhibit B, instead of withdrawing the motion or moving to file a third amended complaint, Plaintiff caused Defendant

to take on further expenses by filing the motion to strike. The Magistrate Judge's remedy for Defendants—compensation for the hours spent drafting the motion to strike—was therefore not erroneous, even if the characterizations of Plaintiff's conduct were incorrect.

Plaintiff also argues that the sanction awarded, $2,935—representing 8.1 hours of attorney work—was unreasonably high. The Court agrees. Defendant's record of billable hours has four entries totaling 8.1 hours that pertain to the motion to strike. Three of which include, in addition to drafting and revising the motion to strike, writing emails regarding the motion, preparing for the oral argument on the motion to amend the complaint, and reviewing Plaintiff's reply brief. (ECF N0. 153-2). The motion to strike was 10 paragraphs long. Attorney Jessica Pask's 1.1 hour billable devoted exclusively to the motion to strike will remain undisturbed. Attorney Brian Schwartz's 7 hours billed for the motion to strike and other tasks will be reduced. Given the mixed component of the billed hours log, it is not possible to disentangle time spent on the motion to strike from time spent on other matters. As the Supreme Court has recognized, "[t]here is no precise rule or formula for making these determinations." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). The Court will therefore allocate half of the hours billed to the motion to strike. Given his hourly rate, Schwartz would have billed $1,330 for the Motion to Strike, and Pask

would have billed $275.00. Plaintiff's counsel therefore owes Defendant's attorneys' fees of $1,605, reduced from $2,935.

B. Defendant's Motion to Compel Lipian's Testimony (ECF No. 195)

Lipian was first deposed by Defendant on July 2, 2019. On advice of counsel, he declined to answer questions regarding his relationship with Scott Walters, David Daniels's husband. Defendant filed a motion to compel, and, on September 6, 2019, the Magistrate Judge ordered that his deposition be continued so that the questions could be answered. (ECF No. 132). Plaintiff objected to this order, and the Court held a hearing on October 17, 2019, at which it partially sustained and partially overruled Plaintiff's objection.

> As long as Plaintiff does not bring his own sexual orientation or history into controversy, Defendants will not be entitled to ask questions about Lipian's sexual history with people unconnected to the allegations in this case. Any relationship he may have had with Scott Walters, however, may pertain to allegations in this case. Defendants are entitled to discovery on whether or how communications and conduct between Lipian and Walters affected or illuminated Lipian's relationship with Daniels. This line of inquiry will be limited. Questions presented to Lipian regarding Walters on matters not connected to Daniels must be of a generic and abstract nature. Probing questions into specific acts or speech are precluded. On events or communications where Daniels was either present or discussed, however, questions can be more detailed and specific, but only where calibrated to produce information on Lipian's interactions with Daniels.

(ECF No. 176, pg. 4-5).

The Court therefore laid out a two-tier standard for questioning. Details of conversations or actions between Lipian and Walters when Daniels was not present

or not mentioned are off-limits, but general inquiries into their relationship over the years are permitted. Understanding the Walters-Lipian relationship may help Defendant understand the Walters-Daniels relationship, which is of critical importance in this case. Details of conversations and activities between Lipian and Walters when Daniels was present or mentioned are more squarely the proper subjects of discovery, but these inquiries are limited only by the need for such questions to be "calibrated to produce information on Lipian's interactions with Daniels." *Id.*

Lipian was deposed by Defendant again on November 18, 2019. At his counsel's instruction, he refused to answer most of the questions regarding his relationship with Walters. On December 6, 2019, Defendants filed the instant motion for sanctions and to compel Lipian's testimony. (ECF No. 195). The motion was briefed and referred to the Magistrate Judge on December 27, 2019. (ECF No. 215). A hearing was held on February 24, 2019, and, on March 11, 2020, the Magistrate Judge granted Defendant's motion and ordered that Plaintiff reappear for a deposition at his own expense. (ECF No. 242).

Plaintiff filed his Objection to this order on March 25, 2020, and that motion is fully briefed. Plaintiff argued that the Magistrate Judge erred 1) when she found that Defendant's questioning was actually frustrated, 2) when she found that Plaintiff should have stopped the questioning to ask for a protective order, 3) when she found

that Defendant's questions were within the scope of the Court's protective order, and

4) when she issued an order instead of a Report and Recommendation.

Looking to these objections in reverse order, the Magistrate Judge's judgment

was consistent with 28 U.S.C. § 636. Plaintiff argues that since Defendant requested

dismissal as one of the sanctions, the motion was a dispositive motion. This is not

so, as "motions…requesting dismissal as simply one of the many options at the

Court's disposal when determining which sanction is most appropriate" are not

automatically dispositive motions. *Plastech Holding Corp. v. WM Greentech Auto.*

*Corp.,* 257 F. Supp. 3d 867, 879, n. 13 (E.D. Mich. 2017). The Court ordered that

the Motion for Sanctions be referred to the Magistrate Judge "for a hearing and

determination pursuant to 28 U.S.C. § 636(b)(1)(A)." (ECF No. 215).

As to the third objection, the Court will not now rule on which of Defendant's

deposition questions are consistent with the protective order and which are not. The

standard remains the same from the October 17, 2019 hearing. The parties shall

inform the Court when the next deposition is taking place, and shall, if any disputes

arise, call the Court to rule on whether the question falls within or without the scope

of the protective order. They may also submit questions to the Court for preapproval.

As to the first two objections, the Magistrate Judge correctly found that

Plaintiff's counsel violated FED. R. CIV. P. 30 by obstructing the deposition. She

employed the following standard of review.

An attorney may not impede, delay or frustrate "the fair examination of the deponent." Fed. R. Civ. P 30(d)(2). Thus, she may order her client "not to answer *only* when necessary to preserve a privilege, to enforce a limitation ordered by the court to answer a question." Fed. R. Civ. P. 30(c)(2) (emphasis added). The attorney may also stop the deposition and then "present a motion under Rule 30(d)(3)" to "terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Rule 30(c)(2) and (d)(3). On such a motion, "*the court* may order that the deposition be terminated or may limit its scope"; that is not the province of the objecting attorney. Rule 30(d)(3)(B) (emphasis added).

"It is the attorney's job to make an objection and then stop talking. If the deponent does not know how to answer a question, he or she may state as much, but it is not appropriate for his or her attorney to push him or her in that direction." *Freedom's Path at Dayton v. Dayton Metro. Hous. Auth.*, 2018 WL 2948021, at *8 (S.D. Ohio June 13, 2018) (internal citations and quotation marks omitted). Indeed, all counsel for the deponent may "do is state a concise, nonargumentative, and nonsuggestive objection on the record and instruct [the] witness not to answer in the limited circumstances laid out in Rule 30(c)(2)." *Id.; see also Montiel v. Taylor*, 2011 WL 1532529, at *3 (E.D. Tenn. Apr. 21, 2011) ("Rule 30(c)(2) allows non-examining counsel at a deposition to do one of two things: (1) listen and (2) make objections.").

Efforts to interject party positions into the course of a deposition inquiry is improper and violative of Rule 30(c)(2). *See Freedom's Path*, 2018 WL 2949021, at *8 (citing *Little Hocking Water Ass'n, Inc. v. E. I. Du Pont de Nemours & Co.*, 2013 WL 6632678, at *15 (S.D. Ohio Dec. 17, 2013)). The deponent is responsible for seeking clarification of a deposing attorney's question he does not understand; "it is not proper for counsel for the deponent to ask the deposing attorney to clarify a question." *Cullen v. Nissan North America, Inc.*, 2010 WL 11579750, at * 6 (M.D. Tenn. Feb. 2, 2010). If counsel for deponent perceives a need to clarify the witness's testimony, "that attempt must await the completion of plaintiff's inquiry." *Little Hocking Water Ass'n*, 2013 WL 6632678, at *15. In *Freedom's Path*, the court admonished counsel from inserting "if you can" or "if you know" and other suggestive comments in his objections, noting that repeatedly interrupting questioning with such comments "can plausibly be seen as coaching the witness." 2018 WL 2948021, at *8 (internal citations and marks omitted).

But improper speaking objections to suggest responses or otherwise coach a witness do not necessarily warrant sanctions, or even an order to reconvene the deposition or to permit other additional discovery. *See id.* at *19; *Cullen*, 2010 WL 11579750, at * 8. Courts assess whether the inappropriate interjections and other improper obstruction actually impeded deposing counsel's questioning or the witness' testimony. *See Little Hocking Water Ass'n,* 2013 WL 6632678, at *15-19; *Cullen,* 2010 WL 11579750, at *8. If the questioning attorney remains undeterred and perseveres in the questioning to elicit substantive responses from the deponent, courts have declined to continue the deposition. *Id.*; *Cullen*, 2010 WL 11579750, at *8. But when an attorney has frustrated a fair examination of the deponent, courts will order the deponent to sit for a new trial. *FedEx Corp. v. United States*, No. 08-2423 MA/P, 2011 WL 2023297, at *11 (W.D. Tenn. Mar. 28, 2011).

(ECF No. 242, PageId.9000-03).

Given these standards, Plaintiff's counsel violated Rule 30. To start, all 39 of her "asked and answered" objections were invalid. See *First Tennessee Bank v. Fed. Deposit Ins. Corp.*, 108 F.R.D. 640, 641 (E.D. Tenn. 1985). The Court's October 17, 2019 order did not preclude questions that may have already been asked and answered, and Plaintiff's counsel is not permitted to construe questions as duplicative and then instruct the deponent not to answer on the grounds that they have already been answered.

Lipian's counsel was well within her rights to instruct her client to not answer a question that she reasonably believed was precluded by the Court's protective order. She was not within her rights to rewrite this protective order to bar questions regarding all acts and communications between Walters and Lipian when Daniels is

not present, where the Court only barred questions regarding *details* of those acts.

This was made amply clear at the October 17, 2019 hearing.

> MR. SCHWARTZ: Just a clarification. I can ask about Andrew Lipian's relationship with Scott Walters even when David Daniels was not present but without details of what they may have or may not done.
> THE COURT: Yes. You can do that in about four questions.
> MR. SCHWARTZ: I can get generic stuff about whether they may have had a sexual contact but without the details I can't go into what that contact was.
> THE COURT: I think that's the definition of what a relationship is.

(ECF No. 177, PageId.4709).

As Lipian has himself observed, the Walters-Lipian relationship was connected to the Daniels-Lipian relationship that is the subject of this lawsuit. (*See* Lipian Dep. pg. 309, ECF No. 195-3, PageId.5385 ("Good relations with him would equal good relations with David Daniels. So I think I wanted him to like me.")). Defendant is entitled to know—to test their theories on the Daniels-Walters-Lipian relationship—whether Walters and Lipian had sexual contact, and roughly when and where. Other potentially invasive questions are off-limits.

Defendant is entitled to ask on a given occasion, or in a given month or season, whether there was sexual contact between Walters and Lipian, as long as it was during the time when Walters and Daniels were married. Plaintiff's instructions for Lipian not to answer, for instance, the question about whether there was sexual contact between him and Walters on the night he stayed over Daniels' apartment (possibly without Daniels) was inappropriate. (Lipian Dep. 325, ECF No. 195-3,

PageId.5389). Defense counsel can ask when Lipian stayed over Daniels's and Walters's shared apartment, even when Daniels was not there, but he cannot ask where various individuals slept, for instance, unless Daniels was present. Nor can defense counsel ask what specific text messages between Lipian and Walters refer to, unless Daniels is mentioned or otherwise connected to the subject matter.

Plaintiff's counsel may instruct Lipian not to answer questions only where Defense counsel seeks details on activity or communication between Lipian and Walters where Daniels is neither present nor implicated. As for questions when Daniels is present, she may object to questions that are not "calibrated to produce information on Lipian's interactions with Daniels," but since she is not the judge of what Defense counsel's questions are calibrated to do, she may not instruct Lipian not to answer such questions.

Though the vast majority of Plaintiff's counsel's instructions for Lipian not to answer were valid, several of Defendant's questions did violate the Court's protective order. Specifically, asking about Lipian's marital problems and whether he discussed them with Walters, asking about whether Lipian ever sent Walters any pictures of himself, and asking whether Lipian brought red wine over to Walters's apartment, were all off limits. (*Id.* at 372, 367, 371). Lipian can therefore be deposed one more time, but the cost of the deposition will be split between Plaintiff and Defendant. To clarify, if Daniels was not present or implicated in the conversation,

Defendant may ask if Lipian engaged in sexual, romantic or intimate acts or conversation, when, and where, and cross-reference those dates and locations with text messages, but defense counsel cannot press Lipian for details on those acts or conversation beyond location and date. That Defendant may be dissatisfied with only abstract answers is a necessary cost of Rule 412's privacy protections. That Plaintiff may be dissatisfied with having to reveal elements of his friendship with Scott Walters is a necessary cost of bringing a Title IX case implicating Lipian's relationship with Walters's husband.

C. Defendant's Motion to Compel Testimony of David Daniels and Scott Walters [196]

On September 6, 2019, the Magistrate Judge ordered Walters and Daniels to appear for their respective depositions, holding that they could not assert a blanket Fifth Amendment privilege, but must do so question-by-question, under oath. (ECF No. 132). Both Daniels and Walters objected, and the Court overruled their objections at the October 17, 2019 hearing. (ECF Nos. 176, 177). Both Daniels and Walters sat for their deposition and asserted the Fifth Amendment in response to almost every question. (ECF No. 196-2; ECF No. 196-3). On December 6, 2019, Defendant moved to compel the testimony of Daniels and Walters. (ECF No. 196). The Court referred the motion to Magistrate Judge Stafford, and on February 26, 2020, she issued a ruling on the record denying the motion. (ECF No. 241). A written order followed. (ECF No. 239).

The Magistrate Judge held that even information that Walters provided about Daniels, and vice versa, could be used against them in their criminal cases in Texas. Walters and Daniels are both charged in Texas with criminal sexual conduct. The criminal allegations against the two in Texas are very similar to the allegations Lipian makes in this case, and they fear that their testimony in this case could be used against them in that case as FED. R. EVID. 404(b) material. The Magistrate Judge found that even testimony about innocuous interactions between either individual and Lipian could conceivably be considered 'grooming'. Looking to the constitutional import of the Fifth Amendment, the Magistrate Judge declined to compel their testimony over their asserted privilege against self-incrimination. (ECF N0. 241, PageId.8915-17*; see also* ECF No. 239 (citing *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense. Bd*., 527 U.S. 666, 682 (1999); *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983); *Emspak v. United States*, 349 U.S. 190, 198 n. 18 (1955); *Convertino v. U.S. Dep't of Justice*, 795 F.3d 587, 592-93 (6th Cir. 2015); and *Baumer v. Schmidt*, No. CV 17-MC-50228, 2019 WL 6873811, at *6 (E.D. Mich. Oct. 24, 2019)).

Defendant then objected to this order on March 12, 2020. (ECF No. 243). Defendant argues that the Magistrate Judge erred 1) by not considering that Daniels waived his Fifth Amendment privilege, 2) by finding that the University did not

specify which questions were not covered by the Fifth Amendment, and 3) by finding that the invocation of the Fifth Amendment was proper in this case.

As to the first argument, Defendant is correct that the Magistrate Judge only cursorily considered the waiver issue. The Court therefore reviews the issue de novo. Daniels argued in his answer to Plaintiff's first amended complaint, when Daniels was still party to this lawsuit, "Plaintiff, of his own accord and free will, behaved in a sexually suggestive or romantic manner towards Daniels and especially towards Daniels's spouse." (ECF No. 16, PageId.143). The Supreme Court has held that "a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell v. United States*, 526 U.S. 314, 321–22 (1999).

*Mitchell* is inapplicable to this case, however. First, Daniels's answer to Lipian's complaint was not testimony. Second, the Court in *Mitchell* was concerned with a witness gaming the Fifth Amendment by benefiting from testifying incompletely about a subject and then asserting his privilege as to facts that do not advantage his case. There is no danger of this here, however, as Daniels has long been dismissed from the suit. The Court declines to deprive Daniels of his Fifth Amendment privilege against self-incrimination, because his attorney wrote a sentence too much in his answer to a suit to which he is no longer a party.

As to the second argument, Defendant argues that the Magistrate Judge erred by finding that Defendant did not point out specific questions for her to review. This is half-true. Defendant in fact highlighted large swathes of questions. The Magistrate Judge reasonably found that no specific questions were identified, likely because highlighting is no substitute for what Defendant finally did on its objection: write out specific questions to which the Fifth Amendment privilege would not apply. These questions all shared one common thread. They all had Plaintiff as the subject of the sentence. Though Defendant should have listed these questions in his original motion so the Magistrate Judge had some specific questions to review, the argument was not forfeited, for Defendant in his original motion did argue that "[t]estimony about Plaintiff's conduct certainly does not infringe upon the Fifth Amendment rights of Daniels and Walters." (ECF No. 196, PageId.5418). In the hearing as well, Defendant argued, "I really fail to see how something that…either Scott Walters or David Daniels is a passive recipient of or where there's no allegation here of any nonconsensual activity between Scott Walters and Andrew Lipian, how that would be used to fulfill any of the 404(b) exceptions or permissible uses of the evidence." (ECF No. 241, PageId.8914-15).

The Court did not order depositions to be taken so that the Fifth Amendment could be asserted question by question, just so that it could once again be confronted with a blanket question of whether the privilege applies or not. "The privilege must

be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify. *In re Morganroth*, 718 F.2d at 167.

The Court will therefore review Defendant's Lipian-as-subject question along with its third objection, that the Fifth Amendment does not apply to those questions where only Lipian's actions are at issue. The privilege against self-incrimination is to be very broadly construed. "The scope of the privilege protects the witness from compelled disclosure "not merely ... [of] evidence which may lead to criminal conviction," but also of 'information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Convertino* 795 F.3d at 592 (quoting *Maness v. Meyers,* 419 U.S. 449, 461 (1975). Evidence that Daniels or Walters engaged in sexual relations with one of Daniels's students, even if consensual, in another state, and years after the conduct alleged in the Texas indictment, could still conceivably provide 404(b) evidence that the two targeted students, or even a certain type of student. Evidence that Walters gives against Daniels could provide evidence against him for aiding-and-abetting the underlying conduct, and vice versa.

The Magistrate Judge did not err by reasoning that evidence of friendliness between Daniels, Walters, and Lipian could be used as Rule 404(b) evidence of

grooming. "[A]n invocation of privilege should be sustained 'if a court can, by the use of reasonable inference or judicial imagination, conceive a sound basis for a reasonable fear of prosecution." *Convertino,* 795 F.3d at 592 (quoting *In re Morganroth,* 718 F.2d at 169). There was therefore nothing erroneous about the Magistrate Judge's hypothetical reasoning as to the application of certain answers to Daniels's or Walters's criminal cases. The Supreme Court has specifically admonished courts that "in determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical; rather must he be acutely aware that in the deviousness of crime and its detection incrimination may be approached and achieved by obscure and unlikely lines of inquiry." *Emspak v. United States*, 349 U.S. 190, 199 (1955). That being said, courts should not rubber stamp every invocation of the privilege. "A witness must…show a 'real danger,' and not a mere imaginary, remote or speculative possibility of prosecution." *In re Morganroth*, 718 F.2d at 167.

Daniels and Walters are already being prosecuted. There is nothing speculative of there prosecution, or the fact that the prosecutor in their Texas cases has told their defense attorneys that he is watching this litigation. Taking the questions least likely to be self-incriminatory—those with Plaintiff as the subject—Defendant reasonably argues that nothing that Lipian did or said to Daniels or Walters when they were "passive recipients" could be evidence of their criminality.

Defendant is right that it would be no direct evidence of a crime, but answers to such questions could certainly serve as a link in the chain of evidence. Lipian's behavior towards Daniels and Walters could reveal similarities between Lipian's role in their lives and the role of the complainant in the Texas case. Coupled with Lipian's testimony, for example, testimony about Lipian's flirtatiousness or friendliness could help prove to a jury that even an outwardly amicable student could be subject to a power imbalance or sexual assault. Moreover, speech and actions do not happen in a vacuum. Any testimony by Daniels or Walters regarding Lipian in their presence naturally sheds a light on their own behavior, speech, and actions. The Magistrate Judge's order will stand.

CONCLUSION

Defendant has demonstrated neither a reason to certify the motion for summary judgment for interlocutory appeal nor a motion to stay. Daniels and Walters legitimately asserted their fifth amendment rights against self-incrimination, and they will not be deposed again. Lipian must still be deposed one last time, in accordance with the Court's protective order. Following this deposition, the case will be ready for trial on Count I of the Third Amended Complaint.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Certify an Interlocutory Appeal [261] and to Stay the Case [262] are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Objections [243] to the Magistrate Judge Order are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant's Renewed Motion for Sanctions [264] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Objections [249] to the Magistrate Judge's Order are **SUSTAINED IN PART AND OVERRULED IN PART**. The parties shall notify the Court in advance of Lipian's next deposition and notify it of any disputes that arise. They may also submit pre-written questions for approval.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: June 19, 2020          Senior United States District Judge